[No. 441-3.  Division Three.  June 8, 1972.]

WALKER & ASSOCIATES, INC., *Respondent,* v. REMIE JAUSSAUD & ASSOCIATES *et al., Appellants,* GEORGE E. WALKER *et al., Respondents.*

*John S. Moore* (of *Velikanje, Moore, Countryman & Shore*), for appellants.

*Douglas D. Peters* (of *Felthous, Brachtenback, Peters & Schmalz*), for respondents.

MUNSON, C.J.—Defendant, Remie Jaussaud & Associates, appeals a trial court's award of damages for breach of contract, and dismissal of his counterclaim for libel.

The portion of defendant's appeal assigning error to the award of damages on plaintiff's cause of action is entirely factual. The challenged findings are amply supported by the evidence. The questioned conclusions are proper extrapolations upon the findings. Consequently, the judgment allowing plaintiff $3,158.17 is affirmed.

With regard to the dismissal of defendant's counterclaim the trial court found: Plaintiff and defendant, as joint venturers, entered into a survey contract with Washington State University (WSU). Plaintiff's associate, Carl Berry, established the ground control points for monumentation. The monumentation on the final planimetric and topographic maps delivered to WSU was incorrect.[1] Plaintiff falsely and libelously attributed the monumentation to defendant. Plaintiff had good motives, however, and its behavior was reasonable under the circumstances, in making the communication which advanced a legitimate business interest of plaintiff and WSU; hence, a qualified privilege existed. The existence of the privilege required defendant

---

[1] The maps contained a control point variance 0.2 feet per 10,000 feet greater than the permissible variance under the contract.

to establish special damages and defendant's failure to do so required dismissal of the counterclaim.

■ We agree with the trial court that the false attribution of inferior work to a professional man or association is injurious to its business, trade or profession and is libelous or actionable per se, *Purvis v. Bremer's, Inc.*, 54 Wn.2d 743, 751, 344 P.2d 705 (1959), *Ward v. Painters' Local Union 300*, 41 Wn.2d 859, 863, 252 P.2d 253 (1953), *Carroll v. Paramount Pictures, Inc.*, 3 F.R.D. 95 (S.D. N.Y. 1942), even where facts extrinsic to the libel are necessary to discern the defamatory meaning. *Owens v. Scott Publishing Co.*, 46 Wn.2d 666, 284 P.2d 296 (1955); *Pitts v. Spokane Chronicle Co.*, 63 Wn.2d 763, 388 P.2d 976 (1964).[2] The trial court found the matters to be libelous per se and that finding is supported by substantial, although disputed, evidence. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959).

■ We also agree there exists within this jurisdiction a qualified or conditional privilege to publish defamatory matter when occasioned between people sharing a common interest, such as a legitimate business relationship. *Ward v. Painters' Local Union 300, supra*, at 865; *Fahey v. Shafer*, 98 Wash. 517, 522, 167 P. 1118 (1917). Such a relationship existed here between the parties and WSU.

The privilege, however, is grounded upon a policy determination which requires freedom of comment when one's interest is involved. It recognizes that in so commenting, there will be times when misinformation is communicated in an honest and reasonable effort to protect or advance the

[2]Malice is not an essential element of civil libel. *Ziebell v. Lumbermens Printing Co.*, 14 Wn.2d 261, 266, 127 P.2d 677 (1942); *Ecuyer v. New York Life Ins. Co.*, 101 Wash. 247, 172 P. 359 (1918); *Fahey v. Shafer*, 98 Wash. 517, 167 P. 1118 (1917).

The attention of the reader is drawn to three articles: Prosser, *Libel Per Quod*, 46 Va. L. Rev. 839, 844-47 (1960); Eldredge, *The Spurious Rule of Libel Per Quod*, 79 Harv. L. Rev. 733 (1966); and Prosser, *More Libel Per Quod*, 79 Harv. L. Rev. 1629 (1966). It appears that Washington does not recognize the distinction between libel per se and libel per quod espoused in Prosser on Torts (3d ed. 1964).

legitimate interest in question. Were this not so, a necessary breakdown in communications might occur, and valid information which should be given or received would not be communicated because of fear of tort liability. 3 Restatement of Torts at 240 (1938). However, the privilege may only be exercised for the purpose intended.

Many valid statements could have been exchanged between plaintiff and WSU based upon defendant's actions or inactions within the performance of a survey contract. But the attribution of the monumentation to defendant, a fact which plaintiff knew was false, was not within an area of communication protected by the privilege. This statement did not further a legitimate interest of plaintiff or WSU.[3]

Notwithstanding, for the sake of argument let us assume the statement was within the qualified privilege. The defense is not absolute. If the libel is patently malicious, the privilege is abused and therefore lost. *Purvis v. Bremer's, Inc., supra* at 755; *Ward v. Painters' Local Union 300, supra* at 866; *Fahey v. Shafer, supra.* If the libelor has not made a good faith-reasonable investigation into the veracity of his utterance but has made same recklessly or with knowledge of its falsity, the privilege is lost. *Chambers v. Leiser,* 43 Wash. 285, 86 P. 627 (1906); *Owens v. Scott Publishing Co.,* 46 Wn.2d 666, 284 P.2d 296 (1955); Restatement of Torts §§ 593-97 at 241-60 (1938).

In the instant case, malice on the part of the utterer is not in question; nor is there an issue as to the truthfulness of the utterance. Thus the trial court's finding relating to motive and reasonable behavior[4] is immaterial since the trial court further found the plaintiff had uttered the statement knowing it to be false.[5]

---

[3] *Cf. Chambers v. Leiser,* 43 Wash. 285, 86 P. 627 (1906).

[4] Premised on Comments, *An Outline of the Law of Libel in Washington,* 30 Wash. L. Rev. 36, 41 (1955), in which the *Fahey* case is cited as authority. The precise language of the instruction, however, is not used anywhere within *Fahey.*

[5] Plaintiff knew defendant had not performed the work, and did not hesitate in alleging payment due for that portion of the work from defendant as one of the bases for the instant action.

Ultimately, whether we determine no privilege existed, or that the existing privilege was exceeded,[6] the result is the same. Plaintiff published a knowingly false and defamatory communication regarding defendant and is liable for same without alleging or proving special damages. *Pitts v. Spokane Chronicle Co.,* 63 Wn.2d 763, 388 P.2d 976 (1964).

Therefore, the judgment is reversed and the case is remanded for determination of damages.

GREEN and EVANS, JJ., concur.

---

[6]Some criticism has been made of the language in *Graham v. Star Publishing Co.,* 133 Wash. 387, 391, 233 P. 625 (1925) wherein it is stated that "privilege ends when falsity begins . . .". Judge Schwellenbach, in *Holden v. American News Co.,* 52 F. Supp. 24 (E.D. Wash. 1943) reviewed previous decisions of the Washington Supreme Court and reconciled this statement with others of the court inasmuch as the language pertained to matters of public interest. The author of *An Outline of the Law of Libel in Washington,* 30 Wash. L. Rev., *supra,* was also critical of the phrase. *Cf., Gaffney v. Scott Publishing Co.,* 41 Wn.2d 191, 248 P.2d 390 (1952), amicus curiae brief, Supreme Court No. 31699. We find no problem interpreting this phrase to mean: If the underlying relationship is present to create a qualified privilege, a statement made with knowledge of its falsity or with a reckless disregard for its truthfulness is an abuse of the privilege, resulting in its loss. *Chambers v. Leiser, supra; Ecuyer v. New York Life Ins. Co., supra; Owens v. Scott Publishing Co., supra.*