[No. 1267-2.    Division Two.    December 23, 1974.]

WILLIAM C. CORBIN et al., Respondents, v. ORRIN L. MADISON et al., Appellants.

*Nicholas A. Maffeo* and *Maffeo & Maffeo*, for appellants.
*Philip H. DeTurk*, for respondents.

ARMSTRONG, J.—Plaintiffs William C. Corbin and Philip H. DeTurk, doing business as Corbin Rentals, commenced the instant action on behalf of their partnership, and as individuals, seeking an accounting of amounts due and payable to the defendants pursuant to a real estate sales contract. In a second and third cause of action, plaintiffs Corbin and DeTurk each sought damages from the defendants for the publication of defamatory statements. From a judgment against them, defendants appeal, challenging both pretrial rulings, and rulings by the trial court on the merits. Defendants first contend that the trial court erred by failing to grant a change of venue, and by entering a summary judgment dismissing the City of Puyallup as a third party defendant. We hold that both pretrial rulings were proper. Defendants next contend that the record does not

support the trial court's determination that an accounting was required, nor the court's determination that the evidence was sufficient to support the judgments against the defendants for libel of both plaintiffs. We disagree with the defendants, and affirm the trial court.

There is substantial evidence in the record to support the following statement of relevant facts. Orrin L. Madison and Dorothy Madison, husband and wife, were the principal shareholders, officers and agents of the Knute America Corporation, Inc. In 1963 this corporation became the assignee of the seller's interest in a real estate sales contract involving a parcel of property which formed the basis for this litigation. The buyer's interest in the real estate contract was partially assigned to plaintiff Corbin in 1964, with the remainder of the buyer's interest assigned to DeTurk in 1967. Prior to the termination of the instant action in the trial court, plaintiff DeTurk became the sole assignee of the vendee's interest in the subject piece of property.

The controversy concerning this property began in March or April of 1970, as a result of a condemnation action commenced by the City of Puyallup against a small portion of the subject property, and against a much larger parcel of adjoining property, all of which was located in a downtown area of Puyallup. The record reflects that the value of the entire area condemned was fixed at $21,000, but that only approximately 10 percent of the land subject to the real estate contract in dispute was condemned. Further, none of the 10 percent condemned had any dwellings or structures on it, nor is there any evidence in the record indicating that the condemnation of the 10 percent materially affected the value of the remaining portion. The owner of the adjacent parcel, a party not involved in this litigation, was thus entitled to the bulk of the proceeds from the condemnation.

The owners of the condemned 10 percent, however, received none of the proceeds of the condemnation. After the City of Puyallup deposited the appropriate compensation

funds into court, proceedings were held to determine the proper disbursement of the funds. When the matter first came on for hearing, all the interested parties were present, including Mr. Orrin Madison, as agent of Knute America Corporation. Knute America Corporation, however, was not represented by counsel, and it was clear that Mr. Madison was not entitled to appear pro se, since only the corporation, and not Mr. Madison as an individual, was a party to the proceedings at that stage. Accordingly, on April 27, 1970, the court entered an order which recited that since it appeared Knute America Corporation might have an interest in the award, the proceedings would be continued until May 11, 1970. It was further ordered that Knute America Corporation was required to enter its appearance in the matter by an attorney properly licensed to practice before the court, or the corporation would be deemed to have waived any claim of interest in the condemnation award.

On the 11th of May 1970, the Knute America Corporation failed to enter an appearance, and a default was duly entered. Mr. Madison did appear, pro se, after having filed an affidavit to the effect that he and his wife were now record title owners of the property by virtue of a quitclaim deed from the corporation dated May 4, 1970. After considering the matter the court's final order distributed the entire award to the adjacent property owner, leaving nothing to be disbursed to the owners of the 10 percent. This order was never appealed, nor does the record reflect any further court action with regard to the property until the instant action for an accounting and for libel was filed on December 10, 1971.

It is clear that the Madisons, since the order for final disbursement of the condemnation award, have believed that it was error for the adjacent owner to receive the entire award, with no part of the award being allocated to their smaller parcel. Nevertheless, the Madisons stubbornly refused to seek the assistance of counsel on behalf of their corporation, as previously ordered by the court, and rather

than appealing the court's order of disbursement, or attempting to set aside the default against their corporation, the course of action undertaken by Mr. Madison was to write the defamatory letters at issue here.

The first argument presented by the defendants in their appeal from the judgment entered against them for libel and for an accounting is that the trial court erred by denying their motion for a change of venue. The only ground for a venue change advanced by defendants is that the prior condemnation action was tried before a judge "of outstanding reputation in Pierce County" and thus, according to defendants, any judge of the Pierce County Superior Court would "tend to sustain" the prior determination. No citation of authority is offered in support of this bald assertion, and this court, of course, would not need to consider the assignment of error. *State v. Pam*, 1 Wn. App. 723, 463 P.2d 200 (1969). However, no further consideration is needed than to merely point out that the granting or denial of a change of venue rests in the sound discretion of the trial judge, and there is not even the slightest indication of an abuse of that discretion with regard to the denial of this rather frivolous motion. *Dill v. PUD 2*, 3 Wn. App. 360, 475 P.2d 309 (1970). A visiting judge from Island County in fact heard the case.

Another pretrial ruling of the trial court is challenged in this appeal. Defendants contend that the court erred by entering a summary judgment dismissing the City of Puyallup as a third party defendant. The City had been named as a third party defendant pursuant to an "amended answer and cross-complaint" filed by the Madisons. The cross complaint sought an adjudication of the Madisons' interest in the previous condemnation proceedings, and sought a judgment against the City in that amount.

It is difficult to understand why error has been assigned to the court's dismissal of the City of Puyallup where the defendants admitted at least three times during the trial of this action that the transfer of title to the City during the

condemnation proceedings was perfectly valid. Again, the defendants cite no authority in support of this assignment of error. Defendants' only argument in support of the assignment of error is the assertion that the City of Puyallup was a necessary party to prove an "unlawful and unconstitutional taking" of their property.

As to this argument, it is clear that the City of Puyallup was properly dismissed, since relitigation of the legality or constitutionality of the condemnation proceedings as between these parties was barred by the doctrine of res judicata. Res judicata is a judicially created doctrine designed to prevent relitigation and to curtail multiplicity of actions by parties, participants or privies who have had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction. *Bordeaux v. Ingersoll Rand Co.*, 71 Wn.2d 392, 395, 429 P.2d 207 (1967); 46 Am. Jur. 2d *Judgments* § 394 (1969). There can be no question that res judicata is applicable to condemnation proceedings. *PUD 1 v. Washington Water Power Co.*, 43 Wn.2d 639, 644, 262 P.2d 976 (1953); *Washington Water Power Co. v. PUD 1*, 46 Wn.2d 899, 278 P.2d 384 (1955); *Casassa v. Seattle*, 66 Wash. 146, 119 P. 13 (1911).

Here the facts disclose that Knute America Corporation was an original party defendant to the condemnation proceedings commenced by the City of Puyallup. On March 16, 1970, a judgment and decree of appropriation as to the property in question was entered.[1] Subsequent to the judgment and decree of appropriation, but before the final order

---

[1] The judgment recites that plaintiff DeTurk appeared at the hearing on the matter on behalf of the defendants, and the record reflects that he was successful in obtaining an award substantially greater than originally offered by the City. Defendants, however, contend that DeTurk was never authorized by them to appear as their attorney, and despite the court's order requiring Knute America Corporation to appear through counsel, neither the corporation, nor the defendants as individuals, were again represented by counsel until the commencement of the instant appeal. Defendants, in their brief on appeal, have made no mention of plaintiff DeTurk's allegedly unauthorized appearance as their attorney.

of disbursement of the compensation paid by the City into the registry of the court, the default of Knute America Corporation was entered. Prior to the entry of this default, and of the final order of disbursement, the Madisons, as individuals, became interested in the condemned property by virtue of a quitclaim deed from the corporation. The Madisons accordingly filed an affidavit and motion in the condemnation proceedings seeking a portion of the award for their interest. The record reflects that Mr. Madison appeared pro se and argued the matter. No one questioned the procedure by which the Madisons were allowed to intervene and appear in the condemnation proceedings. *See Tacoma v. Nyman*, 154 Wash. 154, 281 P. 484 (1929); RCW 8.12.150. The court's final order of disbursement, which awarded no portion of the award to either Knute America Corporation or to the Madisons, was entered on May 11, 1970. No appeal or other proceedings with regard to the matter were taken. Having appeared in this prior condemnation litigation, which finally and conclusively adjudicated the respective rights of the parties, the Madisons are now barred by the doctrine of res judicata from relitigating the issues by way of a cross complaint in the instant action for libel and for an accounting.

At the risk of belaboring the point, it is true, as the Madisons have steadfastly argued, that there are constitutional provisions prohibiting the taking of private property for public use without the payment of just compensation. U.S. Const. amend. 5; Const. art. 1, § 16. The question of just compensation is obviously one which sometimes must be determined by the courts, and because of the importance of the issues, the legislature has expressly provided for expeditious special condemnation proceedings in which the issues may be adjudicated. *See, e.g.,* RCW 8.12. Where a party has participated in such proceedings, but failed to fully pursue the matter as provided by law, that party will not be allowed to open a new and collateral inquiry into an alleged unconstitutional taking, nearly 2 years later, for the

doctrine of res judicata must be invoked to bring an end to litigation which, without the doctrine, could be endless.

We turn now to a consideration of defendants' contention that the trial court erred by entering judgment against them for libel of plaintiffs Corbin and DeTurk. Defendants first argue that the court erred in finding, as the trier of fact, that letters written by the defendants were libelous per se.

■ It has frequently been held that a publication is libelous per se if, among other things, it tends to deprive a living person of the benefit of public confidence or social intercourse, or to injure him in his business, occupation, profession or office. *Purvis v. Bremer's, Inc.*, 54 Wn.2d 743, 344 P.2d 705 (1959); *Ward v. Painters' Local 300*, 41 Wn.2d 859, 863, 252 P.2d 253 (1953); *Walker & Associates, Inc. v. Remie Jaussaud & Associates*, 7 Wn. App. 70, 72, 497 P.2d 949 (1972). There is no doubt the record contains substantial evidence to support the court's finding of fact that the defendants wrote letters which were libelous per se as to both plaintiffs.

One such letter, written to the individual who employed Mr. Corbin as a real estate salesman, contained statements to the following effect: that Corbin and DeTurk had converted the Madisons' money to their own use, that the two "had a scheme afoot to cheat" the Madisons out of further funds, and that when professional men such as Corbin and DeTurk "get to thieving and robbing old people it is time to put them in quarantine." Another such letter, addressed to Corbin Rentals, plaintiffs' partnership, but a copy of which was sent to the City of Puyallup, stated that Corbin Rentals and its attorney, plaintiff DeTurk, had fraudulently paid money meant for the Madisons on another debt. It should be readily apparent, according to the definition recited above, that the trial court did not err in finding as fact that these letters were libelous per se.

Defendants next argue that even if the letters were libelous, truth is a complete defense. *Owens v. Scott Publishing*

*Co.*, 46 Wn.2d 666, 284 P.2d 296 (1955). As applied to this case, the argument is not well taken. Even if it is assumed that the Madisons were erroneously disallowed any share of the condemnation award, defendants did not adduce substantial evidence to support the truth of statements that this resulted because the plaintiffs had a scheme to cheat the Madisons, or had committed thievery, robbery or fraudulent conversion of the Madisons' funds.

■ Nor is there merit to defendants' argument that the libelous letters were either not published, or published subject to a qualified privilege to publish defamatory matter. Defendants cite *Prins v. Holland-North America Mortgage Co.*, 107 Wash. 206, 191 P. 680, 5 A.L.R. 451 (1919), for the proposition that there is no publication of libel where a letter is written at the main office of a corporation and sent to its own branch office. We can find no analogy between the cited case and the instant facts. The cited case does define publication of libel as the communication of the defamatory matter to some third person or persons. *Prins v. Holland-North America Mortgage Co.*, *supra* at 208. Receipt of the libelous letters by Mr. Corbin's employer and by the City of Puyallup clearly constituted publication.

■ Defendants' argument that the publication was pursuant to a qualified privilege is based upon the rule that there is a conditional privilege to publish defamatory matter when occasioned between people sharing a common interest, such as a legitimate business relationship. *Ward v. Painters' Local 300*, *supra* at 865. *Walker & Associates, Inc. v. Remie Jaussaud & Associates*, *supra* at 72. Although the City of Puyallup had commenced a condemnation action against defendants' corporation, and both were thus parties to litigation concerning the same parcel of real estate, it cannot be said that the libelous letters were communicated in furtherance of a common interest between the City and the defendants. Furthermore, there was certainly no common interest giving rise to a privilege existing between the defendants and Mr. Corbin's employer.

Defendants' final argument in regard to the judgment against them in the amount of $1,000 for the libel of each plaintiff is that plaintiffs failed to show any damages. Defendants evidently choose to ignore the fact that the very definition of "libel per se" refers to that type of libel which, if proved, will result in recovery without proof of special or actual damages. *Amsbury v. Cowles Publishing Co.*, 76 Wn.2d 733, 737, 458 P.2d 882 (1969). Where a defamation constitutes libel per se, absent a defense, the defamed person is entitled to a substantial award without proving actual damages. *Waechter v. Carnation Co.*, 5 Wn. App. 121, 128, 485 P.2d 1000 (1971). The judgment for damages in this case was not excessive. *Michielli v. United States Mortgage Co.*, 58 Wn.2d 221, 227, 361 P.2d 758 (1961).

The remaining issue to be resolved is whether the trial court erred in ruling that the defendants should be required to render an accounting to the plaintiffs of what plaintiffs owed upon the real estate contract covering the property in dispute. The requisites to an action for an accounting are concisely set forth in *State v. Taylor*, 58 Wn.2d 252, 262, 362 P.2d 247, 86 A.L.R.2d 1365 (1961), which quoted with approval the following language from *Seattle Nat'l Bank v. School Dist. 40*, 20 Wash. 368, 55 P. 317 (1898):

> "In general, a complaint for an accounting must show by specific averments that there is a fiduciary relation existing between the parties, *or that the account is so complicated that it cannot conveniently be taken in an action at law*. And it must allege that the plaintiff has demanded an accounting from the defendant, and the latter's refusal to render it, in order to state a cause of action."

(Italics ours.) The record in this regard revealed that the defendants by their actions had raised the possibility that disallowable charges had been added to the account, there was testimony to the effect that the parties' figures as to the amounts due did not coincide, it appeared that defendants' records had been casually kept, and there had been

several assignments of both the vendor's and vendee's interest in the real estate contract. The record further revealed that the defendants had repeatedly refused plaintiffs' requests for an accounting to determine the amount due. Under these circumstances it is our opinion that the trial court was acting well within the scope of its equitable powers when the accounting was required, and there is substantial evidence in the record to support the court's judgment as to the balance properly due on the contract.

The judgment is affirmed.

PEARSON, C.J., and PETRIE, J., concur.

Petition for rehearing denied January 30, 1975.

Review denied by Supreme Court March 25, 1975