IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| 3710 IRONGATE, LLC, a Washington limited liability company; LEE E. McDONALD, an individual; and ARSHIA FATHALI, a married person,<br><br>Appellants,<br><br>v.<br><br>UNIT OWNERS ASSOCIATION OF JUDSON PLAZA CONDOMINIUM, a Washington miscellaneous and mutual corporation,<br><br>Respondent. | No. 86717-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, J. — In 2021, the Unit Owners Association of Judson Plaza Condominium (Association) levied a $2.2 million special assessment against all condo units to finance building repairs. Each assessment was based on the owner's allocated percentage. Three condo unit owners, 3710 Irongate, LLC, Lee McDonald, and Arshia Fathali (Owners), sued the Association for declaratory judgment, injunctive relief, and an accounting. The Owners contended the Condominium's Declaration did not contemplate the assessment to be allocated based on preestablished percentage liability, but instead the assessment should be allocated based on the benefit to the units.

The Association counterclaimed for judgment against each owner and for foreclosure of its liens on unpaid assessments. On competing summary

judgment motions, the trial court denied the Owners' motion, granted the Association's motion, and entered judgments and decrees of foreclosure. The court denied the Owners' motion for reconsideration and McDonald's motion to vacate. Irongate appeals, McDonald appeals pro se, and Fathali adopts the arguments of the other appellants. Because the Owners failed to produce sufficient evidence to create material issue of fact concerning the allocation of the special assessment, we affirm the trial court's rulings.

FACTS

Background

Judson Plaza Condominium is a mixed-use building in Bellingham, Washington, consisting of commercial and residential units. The Condominium is governed by the "Declaration of Condominium Subdivision and Covenants, Conditions, Restrictions and Reservations for Judson Plaza" (Declaration). The Condominium is three stories high and consists of 15 units—ten residential and five commercial. The third-floor units have private rooftop decks and gardens only accessible from within each third-floor unit. Irongate owns two second floor condominiums, unit #200 and unit #201; McDonald/Grover[1] owns unit #100, and Fathali owns unit #101.[2] The building is comprised of, in relevant part, units, common elements, and limited common elements.

---

[1] In July 2022, McDonald sold unit #100 to third party defendants Nathan and Pandora Grover without satisfying the Association's lien for unit #100's unpaid Special Assessment allocation.

[2] Irongate, McDonald, and Fathali are collectively known as the "Owners."

Common elements are portions of the Condominium other than the units that are "necessary or convenient to its existence, maintenance, and safety, or normally in common use." Common elements include the roofs, foundations, supports, main walls, stairways, and "all other structural parts of the building." Limited common elements are "those portions of the Common Elements allocated to and reserved for the exclusive use of one or more, but fewer than all of the Units." Examples of limited common elements include private decks, roof gardens, and outside fixtures designed to serve a single unit, such as awnings and window boxes.

Under the Declaration, each unit is allocated an undivided interest in the common elements. This allocation is determined by size of the unit relative to other units and is expressed as a percentage. Each unit's allocated interest is used to determine what proportion of the "common expenses" the unit is assigned. Common expenses are "expenditures made by or financial liabilities of the association, together with any allocation to reserves."

When maintenance, replacement, or repair is required on common elements or limited common elements, the costs are a common expense. An exception occurs when "[a]ny Common Expense or portion thereof benefitting fewer than all of the Units shall be assessed exclusively against the Units benefited."

In 2017, the Association hired a building consultant to "investigate the building envelope for any deficiencies related to the weather resistant barrier." J2 Building Consultants conducted the investigation in June 2017 and found the

Condominium was "displaying signs of weathering, construction defect and contains many locations where standard building practices were not followed and not to industry/code standards." J2 recommended a full remediation be performed, including repairing damage to the trim, windows, and decks. The Association hired Charter Construction, Inc., to perform the remodel.

In February 2021, the Association levied a $2,200,000 special assessment against all condo units to finance the repairs. The assessment was allocated to the unit owners on a pro rata basis based on their allocated interest for common expense liability. The Owners' shares of the special assessment were as follows:

| | | |
|---|---|---|
| 3710 Irongate unit #200 1 | 14.11% | $310,420.00 |
| 3710 Irongate unit #201 | 5.63% | $123,860.00 |
| McDonald/Grover unit #100 | 8.88% | $195,360.00 |
| Fathali unit #101 | 3.60% | $79,200.00 |

Procedural History

In September 2021, the Owners initiated a complaint for declaratory judgment and injunctive relief against the Association for breach of the Declaration. The Owners alleged the Association violated the Declaration by inappropriately allocating costs. The Owners asserted the special assessment should have been allocated pursuant to section 10.4.1(a) of the Declaration, which states, "Any Common Expense or portion thereof benefitting fewer than all of the Units shall be assessed exclusively against the Units benefitted." The

4

Owners also sought an injunction preventing the Association from collecting funds from them and requested an accounting of the funds paid on the Association for the special assessment.  The Association asserted counterclaims seeking judgment against the Owners for the respective shares of the special assessment, as well as foreclosure of the Association's liens for those unpaid assessments.

In October 2021, the Owners issued their first set of interrogatories to the Association.  In response to questions concerning the scope of the work on each individual unit, the Association stated:

> No work is being done on this individual unit itself.  Work is being done to the Common Elements and Limited Common Elements that are the responsibility of the Association.  That work includes, but is not limited to, work on the roofs, main walls, exterior walls, structural parts of the building outside the boundaries of the units, parking garage, side decks, roof decks/gardens, awnings, railings, exterior windows and window framing, and exterior doors and door framing.  The work and costs are described in detail in the J2 reports, plans, the Charter contract, and budget(s) produced in response to Request Nos. 2 and 3.

In January 2023, the parties brought cross motions for summary judgment.  The Association's summary judgment motion claimed the Owners lacked evidence to support their case, the special assessment was properly allocated on a pro rata basis, the Owners did not have a right to an accounting request because a fiduciary relationship did not exist, and the Association was entitled to foreclose its liens for the Owners.  In their cross-motion, the Owners contended that, pursuant to section 10.4.1(a) of the Declaration, the special assessment benefitting fewer than all the units should be assessed exclusively

5

against those units benefitted. The Owners relied on the declarations of Eric Heilborn,[3] Grover and Fathali as evidence to support their claims.

In their motion, the Owners also requested a continuance based on two issues. First, the Owners stated that, insofar as the court deemed it necessary, a continuance should be granted to determine "whether the integrity of the Judson Plaza, and the associated cost savings, may be[] achieved through simple removal of the problematic limited common elements and appurtenances rather than their replacement." Second, the Owners requested a continuance on the accounting cause of action if the court found the Uniform Declaratory Judgments Act, ch. 7.24 RCW, did not permit it to order an accounting. The court granted a CR 56(f) continuance, noting factual questions existed concerning "what common expenses, if any, should be treated as those benefitting fewer than all units," and whether "a fiduciary duty was owed from the Association to the [Owners]."

In September 2023, the Owners sent a third set of interrogatories and requests for production to the Association. The interrogatories requested the Association describe work done on specific units, provide the cost of the individual unit work, and describe how the work benefitted all the units. Many of the questions required the Association to explain work done on "other fixtures," such as doorbells and awnings. For example, when asked about "other fixtures" for unit 310, the Association noted doorbell replacement was necessary to keep the building waterproof, and new awnings also helped keep the building weatherproof. But, the Association indicated no special assessment funds were

---

3    Heilborn is the owner of 3710 Irongate, LLC.

6

used to pay for the awning work. The Association also stated deck railings were installed to comply with code requirements, new windows were installed to "accomplish the weatherproofing needed for the window penetrations," and work done on the private decks and roof gardens was completed to ensure waterproofing.

In December 2023, the Owners sent the Association an e-mail discussing renote of their summary judgment motions. The e-mail stated, in relevant part:

> Based on the latest round of discovery between the Plaintiffs and the Association, we believe that renoting the parties' respective summary judgment motions on the issue of the unit benefit analysis is warranted. Depending on how the Court rules, the parties may be able to avoid further discovery and depositions related to the Plaintiffs' breach of fiduciary duty claim against the Association.

The Association responded, in relevant part, "How about a summary judgment hearing on March 29?" Both parties filed their supplemental briefing on March 1, 2024. In the introduction to their brief, the Owners noted,

> While the Court deferred its ruling to allow the Parties to conduct additional discovery as to the fiduciary duty owed by the Association to the Plaintiffs, the Parties request that the Court take this time to rule on the common expense question as the Court's ruling on the issue may save the Parties significant litigation costs.

Accordingly, the Owners' briefing focused solely on the issue of the unit-benefit analysis. But, in their conclusion, they requested the court order the Association to provide an accounting. The Association's supplemental brief addressed all of the Owners original summary judgment claims.

At the summary judgment hearing, the Owners expressed to the court that "there was some confusion as far as the scope of today's hearings." The Owners stated that, based on their e-mail exchange with the Association in December,

7

they believed the hearing was going to focus solely on the cost allocation issue. Because of this belief, they did not conduct additional discovery on the fiduciary duty claim, and they requested a continuance. The Association responded it was not under the impression the hearing would be limited.

In a written ruling, the trial court denied the Owners' request for a continuance, noting that, although the Owners made a request to the Association to limit the scope of the summary judgment hearing, "no agreement on that issue was apparently reached" and the Owners were "properly put on notice of the issues before the Court, and ha[ve] failed to demonstrate any other reason to further continue." The court also denied the Owners' motion for summary judgment and granted the Association's motion for summary judgment and decree of foreclosure for the Owners' units.

In April 2024, the Owners moved for reconsideration of the orders granting summary judgment to the association and denying their request for a continuance. For the first time, the Owners asserted the Association failed to disclose insurance proceeds they had received. The court denied the motion for reconsideration. McDonald, individually, moved the court several times to vacate the judgment under Civil Rule 60. Among other issues, McDonald alleged the board of the condominium wrongfully withheld insurance proceeds. The court heard arguments on the motion to vacate in August 2024. The court denied McDonald's motion.

The Owners appealed the court's order denying their motion for summary judgment. Irongate, individually, appealed the order granting the Association

8

summary judgement and the order denying the Owners' request for a continuance. No other orders were appealed.

ANALYSIS

Issues Pertaining to All Appellants

The Owners, collectively, appeal the court's order denying their motion for summary judgment, contending the trial court misinterpreted the Declaration and the special assessment was improperly allocated. The Association claims the special assessment was properly allocated based on a plain reading of the Declaration. We agree with the Association.

We review a trial court's ruling on a summary judgment motion de novo. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). " 'Summary judgment is appropriate when there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law.' " *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008) (alteration in original) (internal quotation marks omitted) (quoting *Locke v. City of Seattle*, 162 Wn.2d 474, 483, 172 P.3d 705 (2007)). To avoid summary judgment, the nonmoving party must " 'set[] forth specific facts which sufficiently rebut the mobbing party's contentions and disclose the existence of a genuine issue as to a material fact.' " *Ranger Ins. Co.*, 164 Wn.2d at 552 (quoting *Meyer v. Univ. of Wash.*, 105 Wn.2d 847, 852, 719 P.2d 98 (1986)). We consider "the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party." *Keck*, 184 Wn.2d at 370. But, the nonmoving party " 'may not rely on speculation, [or] argumentative assertions that unresolved factual issues

remain.' " *Ranger Ins. Co.*, 164 Wn.2d at 552 (alteration in original) (quoting *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986)). The adverse party "must set forth specific facts showing that there is a genuine issue for trial." CR 56(e).

The interpretation of a document governing of a condo association is a question of law that we review de novo. *Bangerter v. Hat Island Comty. Assoc.*, 199 Wn.2d 183, 188, 504 P.3d 813 (2022). We apply the rules of contract interpretation when interpreting a declaration. *Wilkinson v. Chiwawa Communities Ass'n*, 180 Wn.2d 241, 249, 327 P.3d 614 (2014). The primary objective in interpreting a governing document is to ascertain the drafter's intent. *Wilkinson*, 180 Wn.2d at 250. "While intent is a factual question, when the available evidence warrants but one conclusion, assessing intent may be determined by this court as a matter of law." *Mullor v. Renaissance Ridge Homeowners' Assoc.*, 22 Wn. App. 2d 905, 912, 516 P.3d 812 (2022).

To determine intent, we look at the plain language of the document and give it its "ordinary and common meaning." *Riss v Angel*, 131 Wn. 2d 612, 621, 934 P.2d 669 (1997). The document is viewed as a whole and, if reasonably possible, we give meaning to every word. *Newport Yacht Ass'n of Condo. Owners v. Supreme Nw. Inc.*, 168 Wn. App. 56, 64, 277 P.3d 18 (2012).

Here, the Owners contend a factual inquiry into what repairs to limited common elements benefitted fewer than all units is not necessary because the plain language of the Declaration states that limited common elements, by definition, benefit fewer than all units and, accordingly, any work done to limited

10

common elements should be levied against the individual units that benefit from the limited common element. But this interpretation takes too narrow a view of the Declaration.

The Declaration plainly states, "Maintenance, painting, repair or replacement of the structure and finish of the Limited Common Elements shall be a Common Expense." And common expenses are an expenditure or financial liability of the Association. Common expenses are allocated to each unit, as determined by the size of the unit. Therefore, maintenance of limited common elements is a common expense allocated to unit owners based on their allocated interest. But, 10.4.1(a) provides an exception for common expenses, noting any common expense "benefitting fewer than all of the Units shall be assessed exclusively against the Units benefitted."

The Owners maintain this exception means any maintenance done to a limited common element is the responsibility of the unit owner with exclusive use of that limited common element, because the unit owner is the only one benefitting from the use of the limited common element. But the Owners' definition of "benefit" is too narrow—there is more than one way to benefit from the maintenance of a limited common element. A limited common element may be for the exclusive use of one unit, but the maintenance of that limited common element can still benefit the entire condominium. For example, repairing and weatherproofing a balcony may protect the units underneath from water leaking into the unit.

The Owners have provided no evidence to support their claim that the repairs completed on limited common elements with the special assessment funds benefitted fewer than all units. And, importantly, nowhere in the Declaration does it state all costs associated with limited common elements shall be assessed exclusively against the unit assigned to that limited common element.

The Owners also point to Exhibit D to the Declaration to support their claim. The Owners contend Exhibit D supports the conclusion that, "[t]he Association's authority to retain control over maintenance and repairs over certain items in the Condominium . . . is separate from a Unit Owner's liability to pay for such repairs, especially as to those that will exclusively benefit a particular Unit Owner." But Exhibit D also states, "In many cases maintenance responsibility is allocated to the Unit Owners Association to ensure central maintenance responsibility, uniformity and quality of repair, and to protect community health and safety." The exhibit differentiates between repairs needed for the overall health and benefit of the building versus damage caused by an individual unit owner.

The Association's interpretation of the Declaration—that repairs and maintenance to limited common elements that benefit all unit owners is a common expense—is both reasonable and emphasizes the collective interest of the condo unit owners. The owners of all units benefit from the building being well-maintained and waterproof. As long as work done on limited common elements is for the benefit of all unit owners, the cost is a common expense.

Accordingly, the Association met its burden on summary judgment by showing a genuine issue exists as to material facts regarding the interpretation of the Declaration. Therefore, the court did not err when it denied the Owners' motion for summary judgment.

Issues Pertaining to Irongate

1. Unit-Benefit Analysis

Irongate claims that, even if the Association's interpretation of the Declaration is correct, a dispute of material fact still exists regarding the scope of work paid for by the special assessment and, therefore, the court erred when it granted the Association's motion for summary judgment. The Association contends Irongate failed to produce any evidence that the work done benefitted less than all units. We agree with the Association.

Here, to survive summary judgment, Irongate needed to put forth specific evidence to support its claim that work done on limited common elements benefitted fewer than all units, thereby triggering section 10.4.1(a) of the Declaration. While Irongate generally asserted work was done on limited common elements, such as doorbells and rooftop decks, it provided no specific evidence that this work benefitted fewer than all units. Irongate submitted declarations from the Owners stating restoration work was conducted on portions of the building not affecting their properties, but the declarations did not explain why the work did not benefit their units. When asked to identify and describe components of the work that did not benefit their units, Irongate objected, stating they "lack[] sufficient information to respond."

For the first time in its motion for reconsideration, Irongate[4] alleged the Association changed their stance on whether work to the awnings was part of the special assessment, and, accordingly, this raised an issue of material fact. Irongate pointed to its first set of interrogatories to the Association, where the Association stated the work being done as part of the project included work on awnings. Irongate then pointed to its third set of interrogatories, where the Association allegedly changed their stance and articulated that new awnings were installed, but were not part of the special assessment. But the Association never indicated the work done on the awnings was allocated to the special assessment. The first set of interrogatories simply asked what work was being done for the project—it did not specify whether the work was part of the special assessment. And, in the third set of interrogatories from Irongate, the Association clarified the work to the awnings was not part of the special assessment. The Association did not change its position that the work done on the awnings was part of the work done on "Common Elements and Limited Common Elements that are the responsibility of the Association," as stated it its answers to the first set of interrogatories. Other than the claim concerning the awnings, which Irongate did not raise in its motion for summary judgment,[5]

---

[4] This section refers to Irongate instead of "Owners," because Irongate, individually, appealed the orders.

[5] The Association contends we should not review this argument because it was not raised during summary judgment, but we do not need to reach this issue because the claim does not create an issue of material fact.

Irongate provided no specific evidence or argument that the maintenance done on the building with special assessment funds benefitted less than all units.

Conversely, the Association supplied detailed explanations of the work being done and how it benefitted the entire condominium, including in its declarations and answers to interrogatories. The Association also provided the findings summary from J2 detailing its investigation of the building and the recommendation that "full remediation be performed" to repair "significant decay and damage" to the building.

Because Irongate did not present sufficient evidence to rebut the Association's claim that the allocation of the special assessment funds was proper, the trial court did not err when it granted the Association's motion for summary judgment.

2. Motion for Continuance

Irongate contends the trial court erred by denying its motion for a continuance to conduct an accounting and granting the Associations motion for summary judgment. The Association claims the trial court did not abuse its discretion when it denied the continuance because Irongate did not meet the standard for obtaining a continuance. We agree with the association.

We review a trial court's denial of a CR 56(f) continuance for abuse of discretion. *Pitzer v. Union Bank of California*, 141 Wn.2d 539, 556, 9 P.3d 805 (2000). A court abuses its discretion when its decision is based on untenable or unreasonable grounds. *Bldg. Indus. Ass'n of Wash. v. McCarthy*, 152 Wn. App. 720, 743, 218 P.3d 196 (2009).

Under CR 56(f), "[a] trial court may continue a summary judgment hearing if the nonmoving party shows a need for additional time to obtain additional affidavits, take depositions, or conduct discovery." *McCarthy*, 152 Wn. App. at 742. A trial court does not abuse its discretion in denying a motion for continuance when " '(1) the requesting party does not offer a good reason for the delay in obtaining the desired evidence; (2) the requesting party does not state what evidence would be established through the additional discovery; or (3) the desired evidence will not raise a genuine issue of material fact.' " *Pitzer*, 141 Wn. 2d at 556 (internal quotation marks omitted) (quoting *Tellevik v. Real Prop.*, 120 Wn.2d 68, 90, 838 P.2d 111 (1992)).

Here, Irongate contends it reasonably believed in good faith that the Association agreed to limit the scope of the second summary judgment hearing and, accordingly, it was an abuse of discretion for the court to deny a continuance. Irongate claims that, had it known the Association was not agreeing to a continuance, it would have conducted additional discovery and presented evidence to the trial court on the issue of a fiduciary-in-fact relationship.

But the purpose of the first continuance was to allow Irongate more time to conduct discovery concerning the fiduciary issue. The court noted in its ruling that "factual questions [we]re raised in the [Owners'] motion regarding whether a special relationship, if any, existed in fact between the parties such that a fiduciary duty was owed from the Association to the [Owners]." The court acknowledged the e-mail from Irongate to the Association suggesting a limited

16

scope for renote, but clarified the e-mail did not establish an agreement between the parties. The court also noted the Association's renote of their summary judgment motion clearly presented the issue of fiduciary duty and "should have dispelled any notion that certain issues were being reserved." The court concluded Irongate was properly put on notice of the issues before the court and did not demonstrate any other reason for the delay in obtaining evidence concerning the fiduciary issue. Accordingly, the trial court did not err when it denied Irongate's motion for a continuance.

3. Accounting Claim

Irongate contends the trial court erred when it granted the Association's motion for summary judgment on its accounting claim because material issues of fact existed over whether Irongate demanded an accounting and whether a fiduciary relationship existed.

To state a cause of action for an accounting, the complaint " 'must show by specific averments that there is a fiduciary relation existing between the parties . . . [a]nd it must allege that the plaintiff has demanded an accounting from the defendant, and the latter's refusal to render it.' " *Parr v. Haselwood Imp., Inc.*, 15 Wn. App. 2 d 604, 616-17, 476 P.3d 629 (2020) (quoting *Corbin v. Madison*, 12 Wn. App. 318, 327, 529 P.2d 1145 (1974)). A fiduciary relationship may be found between two parties when, "(1) one party has superior knowledge, and (2) that party uses that superior knowledge to induce reliance by the party to whom a duty is owed." *Retired Pub. Emp. Council of Wash. v. Charles*, 148 Wn.2d 602, 622, 62 P.3d 470 (2003). While some fiduciary relationships arise as

17

a matter of law (e.g., attorney-client, doctor-patient), other fiduciary relationships "can arise *in fact* regardless of the relationship *in law* between the parties." *Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP*, 110 Wn. App. 412, 434, 40 P.3d 1206 (2002) (emphasis in original). Simply placing trust in someone is not sufficient to create a fiduciary relationship. *Micro Enhancement Int'l*, 110 Wn. App at 435.

Here, Irongate based its claim for accounting on (1) the court's authority under the Declaratory Judgment Act and (2) its contention a fiduciary relationship existed between itself and the Association. Irongate admits the court's authority under the Declaratory Judgment Act is only applicable insofar as the court determines the Association failed to properly allocate the special assessment. As discussed *supra*, the court properly granted summary judgment for the Association on the special assessment claim; therefore, Irongate's claim fails on that bases.

Irongate also contends the trial court erred in granting summary judgment because a material question of fact existed concerning whether Irongate had a fiduciary relationship with the Association and whether Irongate requested an accounting. Irongate maintains it demanded the Association provide an accounting in February 2021, and cites to the declaration of Eric Heilborn as support. Heilborn's declaration does state the Owners, in their communication with the Board, "demanded that the Board provide an accurate accounting." But Heilborn does not indicate when or where this demand occurred. Without more,

this assertion is not sufficient evidence to show Irongate demanded an accounting from the Association.

Even if Irongate can show it demanded an accounting from the Association and the Association refused, it failed to establish a material issue of fact existed as to a fiduciary relationship between itself and the Association. Irongate does not cite to any legal authority to establish a fiduciary relationship, but simply asserts the Association had superior knowledge regarding the condition of the condominiums and was in a position of power. Other than these assertions, Irongate presents no evidence that the Association owed it a fiduciary duty, and " 'argumentative assertions that unresolved factual issues remain' " is not sufficient to overcome a motion for summary judgment. *State v. Meta Platforms, Inc*, 33 Wn. App. 2d 138, 148, 560 P.3d 217 (2024) (quoting *Bucci v. Nw. Tr. Serv., Inc.*, 197 Wn. App. 318, 326, 387 P.3d 1139 (2016)), *review granted*, 4 Wn.3d 1020 (2025). Because Irongate fails to raise a genuine issue of material fact, the trial court did not err when it granted summary judgment in favor of the Association on the accounting claim.

### McDonald's Appeal

In a separate appeal, McDonald contends a number of errors on the part of the trial court. While it is hard to track his arguments, we deduce the following issues from his appeal: The trial court erred by (1) incorrectly interpreting the Declaration; (2) denying the Owners' motion for summary judgement; (3) failing to consider concealed insurance proceeds; (4) denying his motion to vacate; and

19

(5) failing to recuse.[6]  The Association maintains the issues in McDonald's appeal should not be reached because they were not raised at the trial court, they were not properly appealed and, even if the merits of his arguments are reached, no grounds for reversal exist.  We agree with the Association.

Under RAP 5.1, "[a] party seeking review of a trial court decision reviewable as a matter of right must file a notice of appeal."  Here, McDonald did not file a notice of appeal; therefore, his claims are not properly before this court.  Accordingly, we decline to review his appeal.

### Attorney Fees

Both parties request attorney fees on appeal.  Irongate cites to RCW 64.34.455 and RCW 4.84.330[7] to support its request.  The Association cites to section 13.2.4 of the Declaration and RCW 64.34.364(14) to support its request.  Because the Association prevails on appeal, we grant its request for attorney fees.

RAP 18.1 provides that applicable law may grant a party the right to recover reasonable attorney fees on review.  A party requesting fees under RAP 18.1 must provide argument and citation to authority "to advise the court of the appropriate grounds for an award of attorney fees as costs."  *Stiles v. Kearney*, 168 Wn. App. 250, 267, 277 P.3d 9 (2012).

---

[6] Because we addressed the court's denial of the Owners' summary judgment motion *supra*, we do not address it again here.

[7] Irongate's brief cites to RCW 4.85.330, but no such statute exists.  We assume this was a typo and Irongate meant to cite to RCW 4.84.330 which addresses attorney fees in actions involving contracts.

Under RCW 64.34.455,

> If a declarant or any other person subject to this chapter fails to comply with any provision hereof or any provision of the declaration or bylaws, any person or class of persons adversely affected by the failure to comply has a claim for appropriate relief. The court, in an appropriate case, may award reasonable attorney's fees to the prevailing party.

The Condominium Act, ch. 64.34 RCW, also provides an association means to recover "any costs and reasonable attorneys' fees incurred in connection with the collection of delinquent assessments." RCW 64.34.364(14).

Here, because we conclude the trial court did not err when it denied the Owners' motion for summary judgment, denied the Owners' motion for a continuance, and granted the Association's motion for summary judgment, the Association prevails on appeal and is entitled to attorney fees.

We affirm.

_____

WE CONCUR:

_____        _____
Díaz, J.                         Coburn, J.