[No. 52137–9.   En Banc.   May 15, 1986.]

CARL B. MEYER, *Appellant,* v. THE UNIVERSITY
OF WASHINGTON, ET AL,
*Respondents.*

*Stephen K. Strong, Bendich, Stobaugh & Strong,* and *John S. Biggs,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Steve Milam, Assistant,* for respondents.

*Arval A. Morris* and *Cornelius J. Peck* on behalf of the Association of University Professors and *Charles M. Henderson* on behalf of the American Civil Liberties Union, amici curiae for appellant.

DOLLIVER, C.J.—Plaintiff Carl Beat Meyer is a tenured professor of chemistry at the University of Washington. In November 1978, he filed a grievance with the university grievance committee alleging inadequate space for his work

at the chemistry department and insufficient pay. The grievance committee is a standing committee of the faculty of the University which reviews faculty grievances through formal or informal hearings and makes written statements of its findings and recommendations.

In an internal matter separate from plaintiff's grievance action, plaintiff's colleagues in the chemistry department, at a closed executive session faculty meeting on May 17, 1979, approved a motion to reprimand the plaintiff for inappropriate responses to interdepartmental activities. The motion passed by a vote of 22 in favor, 2 opposed, with 1 abstention. The plaintiff left the faculty meeting before discussion regarding the motion took place. From the record, it appears he left with a knowledge of the discussion but not of the subsequent motion to reprimand.

The plaintiff was informed of this faculty action on June 14, 1979. He then added to his list of grievances before the grievance committee new allegations of an improper departmental reprimand and systematic efforts to defame his name. Although the committee considered the reprimand questionable because it bypassed the more normal mechanisms which could have been used, it found no direct evidence the plaintiff had been defamed.

After review of the grievance committee's decision, President William P. Gerberding of the University issued his decision in a letter to the grievance committee. Agreeing with the committee, Gerberding found no action needed to be taken with regard to Meyer's allegations because "on almost all the issues, Professor Meyer's allegations have gone unproven and are found to be without merit." The plaintiff did not utilize the appeal mechanism provided by RCW 28B.19.150.

Plaintiff brought this action in superior court alleging violation of his civil rights under the First, Fifth, and Fourteenth Amendments; violation of 42 U.S.C. §§ 1983, 1985(c) (1976); violation of the rules of the University of Washington and the Open Public Meetings Act of 1971, RCW 42.30; and defamation. He sought injunctive relief,

damages, and attorney fees pursuant to 42 U.S.C. § 1988 (1976). After 1½ years of pretrial discovery, plaintiff filed a motion for partial summary judgment on his Fourteenth Amendment due process claims. In response, defendants also moved for summary judgment. The trial court dismissed all of plaintiff's claims with prejudice and granted summary judgment for defendants. Plaintiff's actions were found to be frivolous and without merit. The trial court awarded defendants, as prevailing parties, costs and attorney fees of $50,000.

Plaintiff appealed his case to the Court of Appeals; we accepted the case on an administrative transfer.

## I

To allege a violation of the right to free speech, a public employee must show the conduct in question is constitutionally protected. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 50 L. Ed. 2d 471, 97 S. Ct. 568 (1977). Whether speech is protected is a question of law, not fact. *Connick v. Myers,* 461 U.S. 138, 148 n.7, 75 L. Ed. 2d 708, 103 S. Ct. 1684 (1983).

Plaintiff argues his First Amendment rights were violated by the reprimand because he was punished for statements made as a public officer on matters of public concern. Defendants argue plaintiff's statements at issue were not protected speech and were instead matters of personal interest or employment concerns, speech not protected by the First Amendment.

In *Connick,* the Supreme Court set the test for determining the scope of First Amendment rights of public employees. In affirming a dismissal of an assistant district attorney for insubordination after she circulated a questionnaire concerning internal office affairs, the Court established a 2–step test.

First, a court must determine whether the speech in question is spoken as a matter of public concern by looking at the content, form, and context of a given statement. *Connick,* at 147–48.

> When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices . . .

*Connick,* at 146. Thus, if the employee is speaking on matters of personal interest, a court applying federal law is not the appropriate forum to review the wisdom of a personnel decision. *Connick,* at 147. Employee grievances concerning internal policy are not protected speech. *Connick,* at 154.

If a court determines the speech to be on a matter of public concern, then the second step requires the court to balance the interest of an employee as a citizen commenting on matters of public concern with the interest of the State as employer in promoting effective and efficient public service. *Connick,* at 150. Because close working relationships are essential to fulfilling public responsibilities, there is a wide degree of deference given to the employer's judgment. *Connick,* at 151–52.

A recent federal court of appeals applied the *Connick* test to the protected speech of a teacher. *Knapp v. Whitaker,* 757 F.2d 827 (7th Cir. 1985). The court in *Knapp* found the teacher's speech to be protected because it was directed at certain school policies and *not* to any particular person with whom the teacher had daily contact. The key to the *Knapp* court was that the "speech" in question was not simply expressions of disagreement with internal decisions of immediate superiors.

In the present case, the plaintiff's speech in question has only an attenuated relationship, if any, to public interest. The incidents of speech discussed during the executive faculty session leading to the reprimand were all regarding matters of personal interest.

> [T]he *Connick* court made it plain that an individual cannot bootstrap his individual grievance into a matter of public concern either by bruiting his complaint to the world or by invoking a supposed popular interest in all aspects of the way public institutions are run.

*Mahaffey v. Kansas Bd. of Regents,* 562 F. Supp. 887, 890

(D. Kan. 1983). This is what plaintiff appears to be doing; his statements are not protected.

Plaintiff also argues the reprimand "chills" his speech in violation of the First Amendment. In a somewhat similar case, a federal district court found the chilling effect of a reprimand was minimized by the restrictions on the use of the reprimand. *Gregory v. Durham Cy. Bd. of Educ.*, 591 F. Supp. 145 (M.D.N.C. 1984). The court also found the fact the plaintiff instituted a grievance proceeding regarding the reprimand reinforced its conclusion the plaintiff's First Amendment rights were not chilled. *Gregory*, at 155.

Here, the reprimand has severe restrictions on its use. In fact, the intent of the reprimand was only as a warning to plaintiff and is not to be used to his detriment. Far from having his own right of free speech "chilled", plaintiff appears to be attempting to chill his colleagues' right to express their views by claiming his First Amendment rights were violated.

A nonmoving party in a summary judgment may not rely on speculation, argumentative assertions that unresolved factual issues remain, or on affidavits considered at face value. After the moving party submits adequate affidavits, the nonmoving party must set forth specific facts which sufficiently rebut the moving party's contentions and disclose the existence of a genuine issue as to a material fact. *Allard v. Board of Regents*, 25 Wn. App. 243, 247, 606 P.2d 280 (1980). *Dwinell's Cent. Neon v. Cosmopolitan Chinook Hotel*, 21 Wn. App. 929, 587 P.2d 191 (1978). Issues of material fact cannot be raised by merely claiming contrary facts. Plaintiff has not presented facts sufficient to overcome the court's summary judgment order for defendants. No First Amendment rights were violated.

II

Plaintiff next claims his reprimand violated the fourteenth amendment to the United States Constitution by depriving him of a property or liberty interest without due process. Defendants argue plaintiff's reprimand affected no

due process interest, and even if it did, the procedures he received were sufficient.

Plaintiff brings his due process claims under 42 U.S.C. § 1983 (1976). Under section 1983, four elements are necessary for recovery: (1) the conduct complained of must be committed by a person acting under color of state law; (2) there must be constitutionally protected property or liberty interests at issue; (3) there must have been a deprivation of a protected interest; and (4) the deprivation must have occurred without due process. *Parratt v. Taylor,* 451 U.S. 527, 535–37, 68 L. Ed. 2d 420, 101 S. Ct. 1908 (1981).

## PROPERTY INTEREST

■ The existence of a due process property claim depends upon claimant's having a legitimate claim of entitlement based on either mutually explicit understanding or on an express or implied contract. *Mackey v. Graham,* 99 Wn.2d 572, 575, 663 P.2d 490 (1983) (citing *Ritter v. Board of Comm'rs,* 96 Wn.2d 503, 509, 637 P.2d 940 (1981)). Plaintiff claims his consulting and research work outside of the University will be damaged by the "dissemination of the [r]eprimand", thus affecting a property interest in his "professional goodwill". In addition, plaintiff claims his property interest was affected by the failure of the chemistry faculty to follow the University's established procedure for discipline of faculty members.

■ Both of plaintiff's claims extend the property interest definition beyond its farthest boundaries. Although plaintiff claims potential severe damage to his outside "professional goodwill", he sets forth no evidence of actual damage. This is not sufficient to overcome a summary judgment order. Any possible damage set forth by plaintiff was to his job as a professor at the University, a job without a recognizable "goodwill" attached. *In re Marriage of Hall,* 103 Wn.2d 236, 242, 692 P.2d 175 (1984) (a salaried professional does not have goodwill).

■ Plaintiff's claim to a property interest in the school's application of its rules and regulations has merit if the

chemistry faculty was required to apply the faculty code when issuing the reprimand. *See Nostrand v. Little,* 58 Wn.2d 111, 123, 132, 361 P.2d 551 (1961) (faculty code part of a tenured professor's employment contract), *appeal dismissed,* 368 U.S. 436 (1962). *But see Parratt v. Taylor, supra* (no property interest in actions outside of an established state procedure). However, the faculty disciplinary regulations require the regulations be followed only if a question arises concerning an alleged violation of a rule or regulation. Plaintiff was not charged with a violation of the faculty code in the reprimand.

Grievances among the faculty at the University are not restricted to the grievance committee procedure and can be handled in a collegial manner within a department. In fact, a majority of matters involving faculty disputes are resolved within their own departments. If the disciplinary committee issued the reprimand, it would have been a University action and plaintiff would have had a property interest in having certain procedures followed. President Gerberding, however, held the reprimand was not to be viewed as an institutional action, but solely as the action of a group of departmental colleagues.

At best plaintiff's property interests were expectations rather than entitlements. Plaintiff does not have a valid property interest in his claim.

### LIBERTY INTEREST

In Washington, a liberty interest may be created by constitution, statute, or by administrative regulation. *In re Sinka,* 92 Wn.2d 555, 599 P.2d 1275 (1979) (liberty interest in statute and regulations that direct the setting of minimum terms). The United States Supreme Court held a liberty interest could be found in the damage of a person's reputation if coupled with a more tangible interest such as employment. *Paul v. Davis,* 424 U.S. 693, 47 L. Ed. 2d 405, 96 S. Ct. 1155 (1976).

The plaintiff argues his liberty interest was affected because his reputation was damaged, coupled with a viola-

tion of his constitutional right to free speech. As discussed previously, the statements of plaintiff at issue are not protected speech. Also, although plaintiff claims the reprimand caused an estrangement from his colleagues (thus, alleged evidence of a damaged reputation), the affidavits of these named colleagues, contrary to plaintiff's allegations, show no such effect by the reprimand.

Plaintiff has no constitutional property or liberty interests affected by the reprimand; therefore, this analysis need go no further. His section 1983 and section 1985 claims are without merit and properly were dismissed.

## III

■ Plaintiff raises the issues of the violation of Const. art. 1, §§ 3, 5 in his brief. After the initial mentions of these constitutional provisions, nothing more is discussed or analyzed. No further review will come from us. As has been well stated, "naked castings into the constitutional sea are not sufficient to command judicial consideration and discussion." *United States v. Phillips,* 433 F.2d 1364, 1366 (8th Cir. 1970).

■ Plaintiff asserts his defamation claim should not have been dismissed because he raised issues of material fact concerning harm from the reprimand. However, conclusory statements unsupported by facts admissible in evidence cannot be considered on a motion for summary judgment. *Mark v. Seattle Times,* 96 Wn.2d 473, 635 P.2d 1081 (1981), *cert. denied,* 457 U.S. 1124 (1982). To overcome a summary judgment, the nonmoving party must establish a prima facie case for defamation. *Mark v. Seattle Times, supra* at 486. Plaintiff has not done so.

The grievance committee, after a proper hearing, found no direct evidence plaintiff had been defamed. In fact, using a generally accepted definition of defamation, the committee suggested plaintiff himself came very close to being guilty of defaming his colleagues.

President Gerberding affirmed the committee's findings:

I concur with the findings of the Committee that no such conduct was proven by the evidence presented. This allegation is dismissed as unproven.

I further concur in the Committee's finding that Professor Meyer's own conduct in these exchanges [was] less than proper. His actions, particularly in regard to his statements about Professor Rabinovitch, were especially dismaying. It appears from your Report that Professor Meyer's actions, described by the Committee as "in poor taste, improper, and destructive," were the true basis for the unharmonious relations between him and his colleagues.

Further discussion of this issue is not necessary. Plaintiff's contention regarding the applicability of the Open Public Meetings Act of 1971, RCW 42.30, is without merit.

## IV

The purpose in allowing attorney fees in a section 1983 action is to encourage enforcement of constitutional rights. *Duranceau v. Tacoma,* 37 Wn. App. 846, 684 P.2d 1311 (1984). (In his brief, plaintiff states his section 1985(c) claim is redundant and it is not separately discussed.) For a defendant to recover attorney fees in a section 1983 action, the plaintiff's action must be without merit in the sense of being groundless or without foundation. *Hughes v. Rowe,* 449 U.S. 5, 14, 66 L. Ed. 2d 163, 101 S. Ct. 173 (1980). A trial court's award of attorney fees will be reversed on appeal only if the reviewing court finds an abuse of discretion has been committed. *Evers v. County of Custer,* 745 F.2d 1196, 1204 (9th Cir. 1984).

The trial court in the present case considered the factors set out in the *Hughes* case in awarding attorney fees to defendants. It also took into account plaintiff's limited income and financial resources in reducing the award to $50,000. The hours of attorney work compared with the final figure show no abuse on the trial court's part. The question for this court is whether plaintiff's action was frivolous or without merit.

In bringing the case, plaintiff stated he relied on counsel's advice that his case had merit. The judge commented

that in his opinion plaintiff had not been totally candid with his original lawyers about the facts. The judge, after reading through the affidavits, depositions, proceedings, and other papers before the court, observed that although plaintiff may not have so intended, his case was a frivolous action and completely without merit.

The issues in this case have been going on longer than this specific action. The lengthy record sets out a picture of bickering adults. The courts are an inappropriate forum in which to settle a personal squabble among professional colleagues; the plaintiff's case has no merit. The award of attorney fees is affirmed.

The trial court is affirmed.

UTTER, BRACHTENBACH, DORE, PEARSON, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.