192 P.3d 886 (2008)
RANGER INSURANCE COMPANY, Respondent,
v.
PIERCE COUNTY, Pierce County Superior Court Clerk, "John Doe" and "Jane Doe", and the State Of Washington, Petitioners.
No. 80389-7.
Supreme Court of Washington, En Banc.
Argued May 8, 2008.
Decided September 18, 2008.
*887 Douglas Warren Vanscoy, Attorney at Law, Deputy Pros. Atny., Tacoma, WA, for Petitioners.
Brett Andrews Purtzer, Attorney at Law, Tacoma, WA, for Respondent.
SANDERS, J.
¶ 1 Pierce County applied money from Ranger Insurance Company (Ranger), at the request of Ranger's agent, to forfeited bonds underwritten by another surety. When the bonds were exonerated, Ranger's funds were not returned. Ranger sued Pierce County for negligence. The trial court granted Pierce County summary judgment of dismissal, holding it met its duty to Ranger as a matter of law. Analyzing the issue as an agency problem the Court of Appeals reversed the trial court. We affirm the Court of Appeals reversal of summary judgment as material issues of fact exist under both duty and agency theories.

FACTUAL AND PROCEDURAL HISTORY
¶ 2 Signature Bail Bonds (Signature) is a bail bond company authorized to post appearance and appeal bonds in Pierce County. It represents two corporate surety companies, Ranger and Granite State Insurance Company (Granite State). Signature holds a power of attorney from each to post bonds on their behalf.
¶ 3 In February 1998 Signature wrote an appearance bond on Ranger paper for $15,000 on behalf of David J. Rogers in case no. 97-1-05295-7. More than a year later, in November 1999, Signature wrote a second bond for $10,000 for Rogers in the same case, this time on Granite State paper. Signature wrote another appearance bond for Rogers on Ranger paper for $20,000 on a second case, no. 98-1-03952-5.
¶ 4 Two years later, in February 2000, Signature wrote a bond for Brandon Sims on Granite State paper for $5,800 in case no. 00-1-01029-1. Two days later Signature wrote an additional bond in the same case on Granite State paper for $4,200.
*888 ¶ 5 In March, Sims failed to appear for a pretrial conference and the court ordered the entire $10,000 bond forfeited. That same month Rogers failed to appear for an omnibus hearing for one of his cases, no. 97-1-05295-7, and the court ordered both appearance bonds, totaling $25,000, forfeited. This resulted in a total obligation of $35,000 based on these forfeited bonds, $15,000 by Ranger and $20,000 by Granite State. Rogers's $20,000 bond in case no. 98-1-03952-5 was never forfeited.[1]
¶ 6 Signature sent two checks totaling $35,000 to Pierce County[2] to satisfy the outstanding obligations for Ranger and Granite State. However Signature stopped payment on those checks. At Signature's request Ranger sent a check for $35,000 to Pierce County, which Pierce County originally applied to Rogers's second case although the $20,000 bond had not been forfeited.
¶ 7 Signature called Pierce County asking it to apply Ranger's $35,000 to the forfeited $15,000 bond written on Ranger paper. Signature also asked Pierce County to apply Ranger's remaining $20,000 to the three forfeited bonds written on Granite State paper, covering both Sims's and Rogers's forfeited bonds. The clerk complied.
¶ 8 Sims and Rogers were subsequently apprehended and returned to custody. The orders of forfeiture were vacated, the bonds exonerated, and the bond money returned to Signature, minus $750 in court costs in each of the two cases. Signature apparently did not forward any of these funds to Ranger.
¶ 9 Ranger sued Pierce County alleging the court clerk negligently handled Ranger's $35,000. In July 2003 the trial court granted Pierce County summary judgment of dismissal on three grounds: Pierce County's repayment resulted in a lack of damage to Ranger, quasi-judicial immunity of Pierce County, and failure to properly serve the State.[3] The Court of Appeals reversed the trial court's summary judgment. It held Pierce County did not have quasi-judicial immunity, nor was the State prejudiced by a failure to serve the State as required by RCW 4.92.100. Ranger Ins. Co. v. Pierce County, noted at 122 Wash.App. 1077, 2004 WL 1834650 (Ranger I). It also held "a genuine issue of material fact exists as to whether the clerk reasonably believed that [James] Barbieri had apparent authority.. . ." Id. at *5. In his well reasoned dissent Acting Chief Judge Morgan argued Pierce County "discharged its liability" to Ranger when it returned the funds to Signature, Ranger's agent.[4]Ranger I, 122 Wash. App. 1077, 2004 WL 1834650, at *10. Pierce County filed a petition for review, which was denied. Ranger Ins. Co. v. Pierce County, 154 Wash.2d 1030, 116 P.3d 399 (2005).
¶ 10 On remand Pierce County again moved for summary judgment, arguing it met the standard of care and therefore was not negligent. In support of this motion, Pierce County submitted a declaration from Joel McAllister, manager of finance and information services for the King County Department *889 of Judicial Administration.[5] This declaration states, "the actions of the Pierce County Superior Court Clerk's Office in connection with the Ranger check and the 1997 and 1998 Rogers and 2000 Sims cases were fully consistent with the standard of care concerning receipt, allocation and disbursement of funds as those exist in clerk's offices today and in 2000." Clerk's Papers (CP) at 77-78. Ranger submitted no evidence to counter McAllister's assessment.
¶ 11 Based on the McAllister declaration, the trial court granted summary judgment in favor of Pierce County, holding it "resolves the issue in the County's favor on the question of violation of duty or failure to provide the requisite standard of care. . . ." Verbatim Report of Proceedings at 20-21. The Court of Appeals reversed, noting "[n]othing in the record on appeal shows Ranger's objective manifestations supporting Signature's apparent authority." Ranger Ins. Co. v. Pierce County, 138 Wash.App. 757, 770, 158 P.3d 1231 (2007) (Ranger II). We granted review. 163 Wash.2d 1005, 180 P.3d 784 (2008).

STANDARD OF REVIEW
¶ 12 We review summary judgments de novo. City of Sequim v. Malkasian, 157 Wash.2d 251, 261, 138 P.3d 943 (2006). "Summary judgment is appropriate when `there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" Locke v. City of Seattle, 162 Wash.2d 474, 483, 172 P.3d 705 (2007) (alteration in original) (quoting CR 56(c)). When determining whether an issue of material fact exists, the court must construe all facts and inferences in favor of the nonmoving party, Ranger Insurance. See Reid v. Pierce County, 136 Wash.2d 195, 201, 961 P.2d 333 (1998). A genuine issue of material fact exists where reasonable minds could differ on the facts controlling the outcome of the litigation. Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982); Barrie v. Hosts of Am., Inc., 94 Wash.2d 640, 618 P.2d 96 (1980).
¶ 13 Summary judgment is subject to a burden-shifting scheme. The moving party is entitled to summary judgment if it submits affidavits establishing it is entitled to judgment as a matter of law. See Meyer v. Univ. of Wash., 105 Wash.2d 847, 719 P.2d 98 (1986). The nonmoving party avoids summary judgment when it "set[s] forth specific facts which sufficiently rebut the moving party's contentions and disclose the existence of a genuine issue as to a material fact." Id. at 852, 719 P.2d 98. To this end the nonmoving party "may not rely on speculation, [or] argumentative assertions that unresolved factual issues remain." Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wash.2d 1, 13, 721 P.2d 1 (1986).

ANALYSIS
¶ 14 "In an action for negligence a plaintiff must prove four basic elements: (1) the existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate cause." Degel v. Majestic Mobile Manor, Inc., 129 Wash.2d 43, 48, 914 P.2d 728 (1996) (citing Tincani v. Inland Empire Zoological Soc'y, 124 Wash.2d 121, 127-28, 875 P.2d 621 (1994)). If any of these elements cannot be met as a matter of law, summary judgment for the defendant is proper.
¶ 15 Ranger alleges Pierce County was negligent when it applied Ranger's money to another surety's forfeited bond leading to Ranger's loss. Pierce County brought a motion for summary judgment contending it met its duty as a matter of law. Ranger argued a material issue of fact exists on whether Signature had the apparent authority to direct Pierce County to allocate Ranger's funds to another surety's obligations.
¶ 16 To meet its duty a municipality must exercise "that care which an ordinarily reasonable person would exercise under the same or similar circumstances." Berglund v. Spokane County, 4 Wash.2d 309, 315, 103 P.2d 355 (1940). Whether a defendant has met the applicable duty is a question for the jury, unless reasonable minds could not differ. Hertog ex rel. S.A.H. v. City of Seattle, 138 Wash.2d 265, 979 P.2d *890 400 (1999). Pierce County argues it acted as a reasonably prudent clerk in similar circumstances and, therefore, was not negligent as a matter of law.
¶ 17 In an effort to establish its adherence to the standard of care, Pierce County submitted Joel McAllister's declaration, which states Pierce County's actions "were fully consistent with the standard of care concerning receipt, allocation and disbursement of funds as those exist in clerk's offices today and in 2000." CP at 77-78. If this declaration demonstrates Pierce County acted as a "reasonably prudent clerk" and did not breach its duty, then summary judgment is appropriate, as Ranger did not submit any evidence to rebut this declaration. Meyer, 105 Wash.2d at 852, 719 P.2d 98.
¶ 18 However, a simple statement indicating an individual acted according to the customs of the industry is not always determinative. In the words of Justice Oliver Wendell Holmes, "`[w]hat usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not.'" Helling v. Carey, 83 Wash.2d 514, 518-19, 519 P.2d 981 (1974) (quoting Texas & Pac. Ry. v. Behymer, 189 U.S. 468, 470, 23 S.Ct. 622, 47 L.Ed. 905 (1903)). Likewise Judge Learned Hand opined a defendant "`never may set its own tests . . . Courts must in the end say what is required. . . .'" Id. at 519, 519 P.2d 981 (quoting T.J. Hooper, 60 F.2d 737, 740 (2d Cir.1932)). McAllister's declaration, asserting the Pierce County clerk acted according to the custom in its industry, does not establish the applicable standard of care as a matter of law.
¶ 19 Summary judgment is inappropriate here because a reasonable jury could find Pierce County did not act as a reasonably prudent clerk and therefore breached its duty. The facts and inferences construed in Ranger's favor demonstrate Pierce County had written notification of which bonds Ranger underwrote, as each bond included the name of the surety on its face and included a copy of its power of attorney with each bond. A reasonable jury could find Ranger notified Pierce County that it acted as surety only for those bonds it underwrote.[6] Although Pierce County argues verifying a bond was underwritten by a surety before allocating the surety's funds to the forfeited bond is an onerous obligation,[7] a reasonable jury could find a reasonably prudent clerk is required to verify the obligation nonetheless. Summary judgment is inappropriate on this basis as a material issue of fact concerning the breach continues to exist.
¶ 20 At the Court of Appeals Ranger argued McAllister's declaration failed to establish Signature had apparent authority to direct Ranger's funds among different surety obligations. If Pierce County established as a matter of law that Signature had apparent authority to redirect Ranger's funds, then Pierce County would have been justified in its actions and met its duty as a matter of law. The Court of Appeals properly determined Pierce County has not demonstrated Signature's apparent authority and summary judgment is inappropriate.
¶ 21 An agent has apparent authority to act for a principal only when the principal makes objective manifestations of the agent's authority "to a third person." King v. Riveland, 125 Wash.2d 500, 507, 886 P.2d 160 (1994). To create apparent authority, a principal's objective manifestations "must cause the one claiming apparent authority to actually, or subjectively, believe *891 that the agent has authority to act for a principal [and] be such that the claimant's actual, subjective belief is objectively reasonable." Id. (citing Smith v. Hansen, Hansen, & Johnson, Inc., 63 Wash.App. 355, 363, 818 P.2d 1127 (1991)). Manifestations of authority by the purported agent do not establish apparent authority to act. Lamb v. Gen. Assocs., Inc., 60 Wash.2d 623, 627, 374 P.2d 677 (1962). To prevail Pierce County must prove Ranger made objective manifestations to Pierce County that caused it to subjectively and reasonably believe Signature had the authority to redirect Ranger's funds to non-Ranger obligations.
¶ 22 The only objective manifestations made by Ranger to Pierce County regarding Signature's authority were in the powers of attorney included with each bond.[8] These powers of attorney do not indicate Signature had the authority to redirect Ranger's funds to satisfy obligations belonging to other sureties. Moreover, they limit Signature's authority to Ranger's bonds, stating "[t]his power void . . . if used . . . in combination with powers from any other surety company." CP at 15. A reasonable jury could find Ranger's statements did not lead Pierce County to believe Signature had the authority to allocate Ranger's money to Granite State's obligations. Therefore there is a genuine issue of material fact regarding Signature's apparent authority, and summary judgment in favor of Pierce County is inappropriate.
¶ 23 We affirm the Court of Appeals reversal of summary judgment favoring Pierce County and remand the case for further proceedings consistent with this opinion.
WE CONCUR: GERRY L. ALEXANDER, C.J., SUSAN OWENS, CHARLES W. JOHNSON, MARY E. FAIRHURST, BARBARA A. MADSEN, JAMES M. JOHNSON, DEBRA L. STEPHENS, TOM CHAMBERS, JJ.
NOTES
[1] These bonds and their status are summarized below.

 -----------------------------------------------------------------------
 Rogers XX-X-XXXXX-X $15,000 Ranger Forfeited
 -----------------------------------------------------------------------
 Rogers XX-X-XXXXX-X $10,000 Granite State Forfeited
 -----------------------------------------------------------------------
 Rogers XX-X-XXXXX-X $20,000 Ranger Not Forfeited
 -----------------------------------------------------------------------
 Sims XX-X-XXXXX-X $ 5,800 Granite State Forfeited
 -----------------------------------------------------------------------
 Sims XX-X-XXXXX-X $ 4,200 Granite State Forfeited
 -----------------------------------------------------------------------

[2] The defendants in this case are Pierce County and the Pierce County Superior Court Clerk. We refer to the defendants collectively as Pierce County in both its arguments and actions.
[3] Ranger also included the State of Washington as a defendant in the amended complaint. As detailed by the Court of Appeals, "Ranger conceded at trial that the State of Washington should be dismissed from this case and raises no argument regarding this issue on appeal." Ranger Ins. Co. v. Pierce County, 138 Wash.App. 757, 765 n. 7, 158 P.3d 1231 (2007) (Ranger II).
[4] The defendants did not request we revisit the Court of Appeals's earlier decision, and we decline to do so sua sponte.
[5] According to McAllister, King County's Department of Judicial Administration includes the functions performed by the superior court clerks in other counties.
[6] Ranger argues it sent an invoice with the funds, indicating they were to be used only for Rogers's bonds underwritten by Ranger. However, there is no evidence of this invoice in the record. Because there is no evidence of this invoice submitted, its existence is not considered in determining summary judgment. See Meyer, 105 Wash.2d at 852, 719 P.2d 98.
[7] McAllister's declaration claims verifying the identity of the surety is burdensome. "The clerk's office would not have known [the identity of the surety] without pulling the court files and reviewing the bond documents themselves." CP at 76. "Clerk's offices are not expected to challenge agents of companies that are expressly authorized by the Superior Court to operate." Id. If clerk's offices were to verify the identity of the surety, McAllister stated, "I would expect our ability to handle matters such as exoneration of bail and prisoner releases on bail to be materially affected." Id. at 77.
[8] Again Ranger contends it included an invoice limiting the allocation of the funds with the check, but since there is no evidence in the record before us, it should not be considered here. See Meyer, 105 Wash.2d at 852, 719 P.2d 98.