IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| BELLEVUE PARK HOMEOWNERS ASSOCIATION, | ) ) ) | No. 74138-1-I |
| Respondent, | ) ) ) | |
| v. | ) ) | |
| AKRAM HOSSEINZADEH and JOHN DOE HOSSEINZADEH, wife and husband, and their marital community, | ) ) ) ) | UNPUBLISHED OPINION<br><br>FILED: March 18, 2019 |
| Appellant. | ) ) ) | |

VERELLEN, J. — Condominium unit owners must pay bona fide assessments that have been properly levied by their homeowners association. Because no material issues of law or fact existed about whether Akram Hosseinzadeh failed to pay the Bellevue Park Homeowners Association (the Association) for validly levied assessments, the court properly entered summary judgment and foreclosed the Association's lien for unpaid assessments.

A party requesting a continuance pursuant to CR 56(f) must, in addition to other requirements, describe the evidence sought and explain the reason she has been unable to obtain the evidence in the time allotted. Because Hosseinzadeh failed to do so, the court correctly denied her motion for a continuance.

Therefore, we affirm.

## FACTS

Hosseinzadeh owns a condominium unit in the Bellevue Park condominium complex. Condominium owners pay assessment dues, which Hosseinzadeh typically paid monthly.

In June of 2012, the Association needed to pay for a storm water remediation project, so it passed a special assessment.[1] On September 24, 2012, the Association sent the unit owners a notice listing each owner's share of the storm drainage assessment "due and payable on November 1, 2012."[2] Hosseinzadeh's 1.68 percent share was $333.48.[3]

Two years later, the Association needed to pay for a new fire alarm system for the complex, and it passed another special assessment.[4] On September 24, 2014, the Association sent unit owners a notice listing each owner's share of the fire alarm system assessment to be paid in 12 monthly payments beginning December 1, 2014, unless an owner elected in writing to pay the assessment in full.[5] Hosseinzadeh's monthly payment with a five percent service fee was $170.62.[6]

---

[1] Clerk's Papers (CP) at 126.

[2] CP at 112, 127.

[3] CP at 128. Each owner's share was calculated based on their ownership percentage in the Association.

[4] CP at 130.

[5] CP at 108-09.

[6] CP at 110.

On November 25, 2014, the Association's attorney sent Hosseinzadeh a demand letter for "an outstanding balance of $432.98 for delinquent assessments through November 1, 2014."[7]

On January 6, 2015, the Association's attorney sent Hosseinzadeh a demand letter for "a delinquent balance in the amount of $1,639.63 through January 6, 2015," with an attached account ledger listing payments and charges back to November 2012.[8] Three days later, Hosseinzadeh replied by letter to the Association's attorney disputing and requesting validation of the claimed debt.[9] On January 26, 2015, the Association's attorney responded with a letter explaining that the unpaid assessments were the basis for a lien against the unit and attaching the account ledger and copies of the special assessment documentation.[10] The attorney offered to schedule a time for review of other Association records Hosseinzadeh identified in her letter. Hosseinzadeh did not respond.

In February 2015, the Association filed suit against Hosseinzadeh to foreclose its lien and collect the alleged debt from both special assessments and her assessment dues.[11] In April, Hosseinzadeh filed an answer.[12] She denied owing anything and alleged that the Association failed to comply with the Washington

---

[7] CP at 96.
[8] CP at 98-99.
[9] CP at 102-03.
[10] CP at 105-14.
[11] CP at 1-4.
[12] CP at 5.

Condominium Act, chapter 64.34 RCW, in imposing the assessments and that the Association was trying to collect unreasonable or incorrectly calculated assessments.[13]

The Association filed a motion for summary judgment on August 25, 2015, and the court heard the motion on September 25. The court denied Hosseinzadeh's oral motion to continue, granted the Association's motion, and entered a foreclosure decree.[14]

Hosseinzadeh appeals.[15]

## ANALYSIS

A threshold issue is whether we should, as the parties request, take judicial notice under ER 201 of materials not in evidence before the trial court. Hosseinzadeh asks us to take notice of the entirety of Bellevue Park's condominium declaration, not just the single article of it already in the record, and the Association asks us to take notice of several unrelated foreclosures and a quitclaim deed.

ER 201 allows a court to take notice of adjudicative facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be

---

[13] CP at 6-8.

[14] CP at 193-96.

[15] The lengthy delay between entry of summary judgment and this appeal resulted from Hosseinzadeh's "attempt to relitigate an issue that was foreclosed by the grant of summary judgment." Bellevue Park Homeowners Ass'n v. Hosseinzadeh, No. 75130-1-I, slip op. at 4 (Wash. Ct. App. July 10, 2017) (unpublished), http://www.courts.wa.gov/opinions/pdf/751301.pdf. While this appeal was pending, Hosseinzadeh hired a new attorney who successfully moved to vacate the judgment. Id. at 2-3. The Association appealed that order, and this court reversed the trial court decision vacating judgment. Id. at 3, 4. This appeal was stayed during the pendency of the collateral appeal.

questioned."[16] Where a party requests that a court take notice and supplies the necessary information, the court must do so if the materials comply with the rules of evidence.[17] Assuming the extrinsic materials here satisfy ER 201, the parties' requests for judicial notice on appeal must also comply with the Rules of Appellate Procedure.[18]

RAP 9.12 is a "special rule" restricting review of summary judgment orders only to "evidence and issues called to the attention of the trial court." This rule ensures the reviewing court engages in the same inquiry as the trial court.[19] Neither party here addresses RAP 9.12, nor do they explain why this court can take notice of extrinsic materials that could have been, but were not, called to the trial court's attention.[20]

---

[16] ER 201(b).

[17] ER 201(a), (d); ER 101.

[18] RAP 1.1; see, e.g., Spokane Research & Def. Fund v. Spokane, 155 Wn.2d 89, 98, 117 P.3d 1117 (2005) ("RAP 9.11 applies in addition to the normal judicial notice standard."); In Matter of Adoption of B.T., 150 Wn.2d 409, 414, 78 P.3d 634 (2003) (applying RAP 9.11 where the parties asked the Supreme Court to take judicial notice on appeal).

[19] Washington Fed'n of State Emps., Council 28, AFL-CIO v. Office of Fin. Mgmt., 121 Wn.2d 152, 157, 849 P.2d 1201 (1993).

[20] See Mithoug v. Apollo Radio of Spokane, 128 Wn.2d 460, 462, 909 P.2d 291 (1996) (evidence must have been, at a minimum, present in the trial record for it to have been called to the court's attention); see also Hurley v. Port Blakely Tree Farms L.P., 182 Wn. App. 753, 768 n.10, 332 P.3d 469 (2014) (declining, pursuant to RAP 9.12, to consider extrinsic materials submitted as appendices to a party's appellate briefing from a summary judgment order because the materials were not before the trial court).

We also consider the requirements of RAP 9.11.[21] RAP 9.11(a) allows this court to consider extrinsic materials where, in relevant part, "it is equitable to excuse a party's failure to present the evidence to the trial court" and where "the additional evidence would probably change the decision being reviewed." Bellevue Park fails to explain why the materials it seeks admitted into evidence on appeal would change the outcome here. Hosseinzadeh does not explain why she failed to provide the entirety of the condominium declaration to the trial court when her affirmative defenses asserted that the disputed assessments were invalid, unreasonable, and incorrectly calculated.

Neither party addresses the interplay of ER 201, RAP 9.11, and RAP 9.12, and the parties' limited arguments about RAP 9.11 are not compelling. Accordingly, we decline to take notice of the extrinsic materials.

## Motion for Summary Judgment

We review a grant of summary judgment de novo.[22] We undertake the same inquiry as the trial court when reviewing a summary judgment decision[23] and consider "'only evidence and issues called to the attention of the trial court.'"[24] Summary judgment is appropriate where there are no genuine issues of material fact

---

[21] Spokane Research & Def. Fund, 155 Wn.2d at 98; Cox v. Kroger, 2 Wn. App. 2d 395, 410 n.39, 409 P.3d 1191 (2018).

[22] Anderson v. Soap Lake Sch. Dist., 191 Wn.2d 343, 353, 423 P.3d 197 (2018) (quoting Scrivener v. Clark Coll., 181 Wn.2d 439, 444, 334 P.3d 541 (2014).

[23] Boyd v. Sunflower Properties, LLC, 197 Wn. App. 137, 142, 389 P.3d 626 (2016).

[24] Anderson, 191 Wn.2d at 354 (quoting RAP 9.12)

and the movant is entitled to judgment as a matter of law.[25] "A material fact is one upon which the outcome of the litigation depends in whole or in part."[26] If the movant establishes that it is entitled to summary judgment as a matter of law, the nonmoving party avoids summary judgment by setting forth "'specific facts which sufficiently rebut the [movant's] contentions and disclose the existence of a genuine issue as to a material fact.'"[27] Although we consider all reasonable factual inferences in the light most favorable to the nonmoving party,[28] "the nonmoving party 'may not rely on speculation, [or] argumentative assertions that unresolved factual issues remain.'"[29]

Owners' associations are empowered by statute and private agreement to manage a condominium's common elements.[30] The declaration, a private agreement creating the condominium, defines an association's powers.[31]

The Washington Condominium Act empowers an association to levy assessments on property owners as members of the association.[32] In a "somewhat

---

[25] Id. at 353 (quoting Scrivener, 181 Wn.2d at 444); CR 56(c).

[26] Atherton Condo. Apartment-Owners Ass'n Bd. of Directors v. Blume Dev. Co., 115 Wn.2d 506, 516, 799 P.2d 250 (1990).

[27] Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008) (quoting Meyer v. Univ. of Wash., 105 Wn.2d 847, 852, 719 P.2d 98 (1986)).

[28] Klahanie Ass'n v. Sundance at Klahanie Condo. Ass'n, 1 Wn. App. 2d 874, 876, 407 P.3d 1191 (2017), review denied, 190 Wn.2d 1015, 415 P.3d 1192 (2018).

[29] Ranger Ins., 164 Wn.2d at 552 (alteration in original) (quoting Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wn.2d 1, 13, 721 P.2d 1 (1986)).

[30] Woodley v. Style Corp., No. 77352-6-I, slip. op. at 16 (Wash. Ct. App. Feb. 11, 2019), http://www.courts.wa.gov/opinions/pdf/773526opin.pdf (citing 18 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS § 12.2, at 23 (2nd ed. 2004)).

[31] Id.; RCW 64.34.304(1).

complicated exception to the" usual rules for recording encumbrances, the Washington Condominium Act also gives an association a lien against the property of owners with unpaid, past due assessments of any kind.[33] Recordation of the condominium declaration "constitutes record notice and perfection of the lien for assessments."[34] "Viewed in this light, a future lien for unpaid condominium assessments is established at the time the condominium declaration is recorded, even though it may not be enforceable until the unit owner defaults on his or her assessments, if ever."[35]

Commensurate with this statutory authority, article 9 of Bellevue Park's declaration gives the Association the "power to levy assessments against all units for the purpose of creating and replenishing a common expense fund with which to pay 'common expenses.'"[36] Article 9 imposes a corresponding liability on each owner to "pay [her] share of the common expenses and special charges."[37] And "[u]npaid assessments shall constitute a lien upon the unit which has not paid."[38]

First, Hosseinzadeh argues a material issue of fact exists about whether she must pay the special assessments because, she contends, the Association violated

---

[32] Klahanie, 1 Wn. App. 2d at 877 (citing RCW 64.34.360); RCW 64.34.304(1)(b).

[33] BAC Home Loans Servicing, LP v. Fulbright, 180 Wn.2d 754, 762, 328 P.3d 895 (2014); Klahanie, 1 Wn. App. 2d at 877 (citing RCW 64.34.364(1)).

[34] RCW 64.34.364(7).

[35] BAC, 180 Wn.2d at 763.

[36] CP at 17 (article 9.01).

[37] CP at 17 (article 9.02).

[38] CP at 18 (article 9.02).

the declaration in levying them. Both the Washington Condominium Act and article 9 of the declaration provide the Association with clear authority to levy assessments for common expenses. Hosseinzadeh asserts that section 7.12 of the declaration requires a vote by unit owners before levying an assessment for more than $5,000. Naturally, this argument requires evaluating section 7.12. But Hosseinzadeh failed to submit section 7.12 into the record on summary judgment. The only evidentiary support for her argument are two sentences from her brother's affidavit:

> I believe the condominium bylaws, State, and/or Federal Laws and regulations require[ ] the association to set a meeting and to obtain 51 or 75 affirmative votes before enforcing new assessments. The association has failed to form or has failed to invite us to such a meeting and has failed to obtain our vote for any new assessments.[39]

This vague assertion of noncompliance does not mention the declaration and does no more than make a conclusory assertion. Because section 7.12 was not in evidence before the trial court, Hosseinzadeh essentially raises this argument for the first time on appeal. Moreover, we note the illogic and irony of reversing the trial court for improperly interpreting a contract provision it never saw, heard argument about, or otherwise had called to its attention. Hosseinzadeh's brother's argumentative declaration is insufficient to defeat summary judgment.

Further, even if section 7.12 were in the record and not just improperly appended to Hosseinzadeh's opening brief,[40] our analysis would not change. Section 7.12 requires a vote by the owners before the Association "acquire[s] and

---

[39] CP at 63-64.

[40] See RAP 10.3(a)(8) ("An appendix may not include materials not contained in the record on review without permission from the appellate court.").

pay[s] for . . . capital additions and improvements" of more than $5,000.[41] But Hosseinzadeh does not establish this restriction applies to the Association's special assessments. Likely because section 7.12 was not mentioned in any of the summary judgment materials, the record is silent on whether the wastewater remediation project and fire alarm system were capital additions or improvements. This limited record does not support Hosseinzadeh's argument that unit owners had to approve the special assessments.

Second, Hosseinzadeh argues summary judgment was inappropriate because she contests whether the Association provided adequate notice before referring her account to collections. Hosseinzadeh filed a declaration stating, "I did not receive the notice required by the [Association's] by-laws and I was not given an opportunity to cure the alleged default, as required by the by-laws."[42] But the Washington Condominium Act provides that notice of a lien can be imputed to Hosseinzadeh because "[r]ecording of the declaration constitutes record notice and perfection of the lien for assessments."[43] And nothing in the bylaws requires that an owner be provided notice or an opportunity to cure prior to referral of assessment debt to collections.[44] Regardless, the Association sent notices to every unit owner about each special assessment and the amounts they owed. The Association also sent letters to Hosseinzadeh about her outstanding assessment balance before filing to

---

[41] Appellant's Br. at 12.

[42] CP at 50.

[43] RCW 64.34.364(7).

[44] See CP at 147-66.

foreclose on her unit.[45] Hosseinzadeh's argumentative assertion about the bylaws is insufficient to defeat summary judgment.

Third, Hosseinzadeh argues summary judgment was inappropriate because she disputes the amounts owed to the Association. But she admits to owing money to the Association.[46] And the Washington Condominium Act creates a lien for assessments that can be foreclosed on for any past due amount owed by a unit owner.[47] Her admission is consistent with the Association's right to foreclose when it did. Hosseinzadeh's general and unsupported declaration disputing that she owed $4,508.06 to the Association in total assessments through August 1, 2015 is not sufficient to create a genuine issue of material fact as to the exact amount owed.[48]

Hosseinzadeh also argues that the Association improperly imposed a security deposit because she regularly paid her monthly assessments.[49] Article 9 lets the Association levy a "security deposit" on any owner who is "chronically delinquent in

---

[45] Even if Hosseinzadeh were correct that she was entitled to notice under the bylaws prior to the Association filing for foreclosure, the undisputed evidence shows she received two letters on November 25, 2014, and January 6, 2015 that stated her outstanding balance, provided her account history, provided an avenue for repayment, and warned her that foreclosure could occur if she failed to pay. CP at 96, 98-100, 105-07.

[46] See e.g., Appellant's Br. at 15 (conceding the evidence shows Hosseinzadeh had an account balance at the end of October 2014), 16 (describing Hosseinzadeh's account in November 2014 as having "almost no delinquent balance at the end of October 2014") (emphasis added); RP (Sept. 25, 2015) at 4 (admitting "[t]hat for years and years, you know, there had been a few hundred dollars of arrears").

[47] RCW 64.34.364(1), (9).

[48] Ranger Ins., 164 Wn.2d at 552 (nonmoving party must set forth specific facts to rebut moving party's contentions); CP at 50.

[49] Appellant's Br. at 17.

11

paying any assessments."[50] The undisputed evidence presented on summary judgment shows Hosseinzadeh was in arrears beginning on November 1, 2012, when the first special assessment came due, and she never paid that debt.[51] The same account ledger also shows she never paid any of the second special assessment that came due on December 1, 2014.[52] Hosseinzadeh never paid her full share of either special assessment.[53]

The Association levied a security deposit on February 11, 2015, when Hosseinzadeh had yet to pay the 2012 special assessment, the 2014 special assessment, and $29.02 of monthly dues outstanding from an underpayment dating to January 8, 2014.[54] Although Hosseinzadeh regularly paid most of her regular

---

[50] CP at 19 (article 9.08.2) (emphasis added).

[51] CP at 143-45.

[52] Id. Hosseinzadeh focuses on a December 18, 2013 dues notice to argue the account ledger is inaccurate, thus creating an issue of fact about whether she paid her 2012 special assessment. Br. of App. at 14 (citing CP at 141). The December 18 notice states Hosseinzadeh owed $321.65 in assessment dues and $12.23 in special assessments. CP at 141. Hosseinzadeh contends this notice shows she paid $321.65 toward her 2012 special assessment debt. The Association contends it mistakenly credited the payment toward her special assessment debt rather than the regular association dues Hosseinzadeh intended to pay. Resp't's Br. at 27-28. But the difference is immaterial because the same amount of debt remained outstanding regardless of how the Association applied the payment.

[53] CP at 143-45.

[54] CP at 143-44. The $1,596.33 amount levied for a security deposit complied with article 9 because it is equal to what was then three months' estimated monthly assessments. CP at 15, 19. At that time, Hosseinzadeh owed $532.11 per month in regular dues, special assessments, and fees.

monthly assessments, she chronically failed to pay the special assessments. Her mere assertion that she was not chronically delinquent does not create a dispute of material fact.[55]

Fourth, Hosseinzadeh argues an issue of material fact exists about whether the Association retaliated against her when it aggressively pursued its collection and foreclosure action. But it is undisputed that she owed money to the Association, and she does not argue the assessments themselves were imposed in a discriminatory manner or for a discriminatory purpose. Because both the Washington Condominium Act and article 9 of the declaration let the Association foreclose on the assessment liens that automatically exist for past due assessments,[56] the Association's motivation in foreclosing a bona fide lien resulting from nonpayment of nondiscriminatory and properly levied assessments is immaterial here.

Hosseinzadeh asserts as "evidence of retaliation" two complaints filed with Washington's Human Rights Commission by her brother against the Association.[57] But the Association presented uncontested evidence that it took aggressive collection actions in 2014 and 2015 against other unit owners with unpaid assessments. Hosseinzadeh's only evidence linking the foreclosure action to her brother's complaints are unsupported assertions in declarations from her and her brother stating their belief that the foreclosure was retaliatory. These merely conclusory assertions are insufficient to defeat summary judgment particularly where, as here,

[55] Ranger Ins., 164 Wn.2d at 552.
[56] RCW 64.34.364(1); CP at 17-18.
[57] Br. of App. at 18, Reply at 14.

the movant shows it treated the nonmoving party in the same manner as other unit owners.

CR 56(f) Motion to Continue

We review denial of a CR 56(f) motion to continue for abuse of discretion.[58] "'A court may deny a motion for a continuance when (1) the requesting party does not offer a good reason for the delay in obtaining the desired evidence; (2) the requesting party does not state what evidence would be established through the additional discovery; or (3) the desired evidence will not raise a genuine issue of material fact.'"[59]

On the morning of oral argument on summary judgment, Hosseinzadeh filed a motion for leave to amend her answer by joining new parties and asserting multiple counterclaims.[60] About two hours later during oral argument, and apropos of nothing, Hosseinzadeh moved for a continuance, and the court denied it:

> By the way, Your Honor, we've put before the court today a motion [for leave] to amend the answer of all counterclaims and parties, counterclaim parties as well. I respectfully at least request, Your Honor, that for a [CR] 56(f) continuance for 60 days so that I could at least take the dep—the [CR] 30(b)(6) deposition of the condo association to determine, you know, whether or not there are some ongoing issues of fact related to the way that these fees were assessed and the balance.[61]

---

[58] Pitzer v. Union Bank of California, 141 Wn.2d 539, 556, 9 P.3d 805 (2000).

[59] Id. (internal quotation marks omitted) (quoting Tellevik v. Real Property, 120 Wn.2d 68, 90, 838 P.2d 111 (1992)).

[60] CP at 178-79.

[61] RP (Sept. 25, 2015) at 9.

Hosseinzadeh failed to explain why she had been unable to obtain that evidence during the six months between February 20, 2015, when the Association filed for foreclosure, and August 25, 2015, when the Association moved for summary judgment. Thus, the court did not abuse its discretion by denying her motion.

Attorney Fees

Both parties request attorney fees on appeal pursuant to RAP 18.1. Under RAP 18.1(a), a party may recover attorney fees if authorized by statute. The Washington Condominium Act entitles an association to recover "any costs and reasonable attorney fees incurred in connection with the collection of delinquent assessments" and "if it prevails on appeal."[62] Because the Association prevails here, it is entitled to attorney fees provided it complies with RAP 18.1(d).

Therefore, we affirm.

WE CONCUR:

---

[62] RCW 64.34.364(14).