# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON acting through the DEPARTMENT OF ECOLOGY, | No. 56088-7-II |
| Respondent, | |
| v. | |
| BRUCE JUSTINEN and SEASOFT SCUBA GEAR INC., | UNPUBLISHED OPINION |
| Appellants. | |

CRUSER, A.C.J. — The Department of Ecology (Ecology) imposed a $197,000 penalty on Seasoft Scuba Gear and the owner of Seasoft, Bruce Justinen, (Seasoft) for improper disposal of hazardous materials. Ecology filed suit to enforce the penalty after Seasoft failed to either appeal or pay the penalty. Ecology then moved for summary judgment that the court granted.

Seasoft appeals, claiming there were remaining questions of material fact that made summary judgment improper and Ecology's penalty violated the Eighth Amendment. We conclude that Seasoft fails to show any remaining questions of material fact. We further conclude that RCW 34.05.586 prevents Seasoft from raising its Eighth Amendment claim for the first time in this civil enforcement proceeding. Finally, even if Seasoft was not prevented from raising an Eighth Amendment argument, it fails to explain how the penalty violates the Eighth Amendment. Accordingly, we affirm.

## FACTS

### I. SEASOFT'S VIOLATIONS

Following an anonymous tip that Seasoft had been improperly disposing of lead, Ecology sent a team to Seasoft's property to investigate. Seasoft used reclaimed lead shot to manufacture diving weights, and it had been operating for three years at the location Ecology visited. Three to five times a month Seasoft cleaned the reclaimed lead by mixing it with water. The cleaning process resulted in a "slurry" that was placed into a can until the water and lead separated at which point the water was siphoned into the bushes or a toilet. Clerk's Papers at 189.

Seasoft's cleaning process also created "[l]ead sludge" that Seasoft claimed was taken to Thurston County's HazoHouse, but Seasoft could produce only one receipt from HazoHouse, for the day after Ecology's first visit. *Id.* at 172. However, Seasoft had records that it had received 9,100 pounds of lead shot in the last 6 months, of which at least 5,600 pounds were reclaimed lead shot. Additionally, Justinen acknowledged he was keeping lead sludge at his house while waiting for another appointment at HazoHouse.

At Seasoft's property, Ecology observed a pallet, on which the lead cleaner sat, that was covered "in a grey film of lead residue" that was later taken to Justinen's residence. *Id.* at 173. Ecology found buckets with holes in the bottom that had grey staining and a toilet with grey staining as well as solvent soaked paper towels in the "recycling only" container. *Id.* at 176. Ecology also noted there appeared to be a new spill of lead shot near a mixer that Ecology believed occurred since a previous visit, even though Ecology had instructed Seasoft to stop processing the lead.

Outside, there was metal lead dust on the concrete, and in the parking lot there was "lead shot scattered on the asphalt and settled in the crevices" and "a trail of lead shot" going into a storm drain. *Id.* at 173. Ecology discovered "grey silt like material" in the surrounding brush and on a gravel path. *Id.* at 174. Four soil samples from the area revealed that "lead and arsenic levels in the soil [we]re more than 200 times [Model Toxics Control Act] clean-up levels."[1] *Id.* at 189 (underline omitted). Ecology also found a "contaminated area" about 9 feet from Seasoft's building that encompassed "an area approximately 6-feet by 6-feet" and was "approximately 2.5-inches deep." *Id.* at 175. Also, "lead contaminated plant debris and shot" was discovered in an employee's truck. *Id.*

Ecology issued a $197,000 penalty for four different types of violations. The first was for Seasoft's "[f]ailure to send dangerous waste to a permitted treatment, storage, or disposal facility." *Id.* at 12. Ecology found 12 instances of this violation, citing the lead and arsenic contaminated soil, the lead that reached the storm drain and sewer, the shipment to the HazoHouse, and the fact Seasoft had no records of ever taking the hazardous materials to a proper disposal facility.[2]

The second violation category was "[f]ailure to meet the requirements for transporters of dangerous waste." *Id.* at 13. Ecology found three instances of this violation based off Justinen's

---

[1] "A cleanup level is the concentration of a hazardous substance in soil, water, air or sediment that is determined to be protective of human health and the environment under specified exposure conditions." WAC 173-340-700(2). In combination with points of compliance, clean up levels "typically define the area or volume of soil, water, air or sediment at a site that must be addressed by the cleanup action." *Id.*

[2] Ecology explained that HazoHouse is only a Moderate Risk Waste (MRW) facility. WAC 173-350-100 provides that MRW is "solid waste that is limited to conditionally exempt small quantity generator (CESQG) waste and household hazardous waste (HHW)."

claims he had taken "many shipments" to HazoHouse and because Seasoft employees told Ecology that Seasoft continued to transport waste after being instructed not to. *Id.* at 194.

The third category was "[f]ailure to take appropriate mitigation and control actions after a spill or discharge." *Id.* at 13. Ecology found there were 12 instances of this third category based off Seasoft's intentional release of the hazardous materials into the soil, storm drain, and sewer.

The fourth violation category was "[f]ailure to designate waste according to required procedures." *Id.* at 14. Ecology determined there were two instances of this violation.

## II. PROCEEDINGS BELOW

Seasoft was informed that it had 30 days to appeal the penalty to the Pollution Control Hearings Board (Board). After seven months, Seasoft had failed to pay the penalty or appeal. Ecology filed suit to recover the penalty. In Seasoft's answer, it asserted in its defense that the penalty violated the Eighth Amendment.

Ecology moved for summary judgment, arguing that Seasoft was barred from raising an Eighth Amendment defense in the enforcement proceeding because it had not appealed the penalty and that even if Seasoft was allowed to raise an Eighth Amendment challenge, the challenge failed.

Seasoft responded that there were questions of material fact but failed to explain what facts were disputed or how those facts were material. Additionally, Seasoft asserted that summary judgment was improper because the penalty violated the Eighth Amendment. Seasoft also included a declaration by Justinen in which Justinen asserted that Seasoft's violations were not as severe or as numerous as Ecology claimed.

The trial court granted summary judgment, ruling that there were no genuine issues of material fact, Seasoft had failed to exhaust its administrative remedies, and Ecology was entitled to judgment as a matter of law.

Seasoft appeals.

STANDARD OF REVIEW

"We review a trial court's decision to grant summary judgment de novo and conduct the same inquiry as the trial court, considering the facts and all reasonable inferences arising from the facts in the light most favorable to the nonmoving party." *Kosovan v. Omni Ins. Co.*, 19 Wn. App. 2d 668, 679, 496 P.3d 347 (2021). Summary judgment in favor of the moving party is proper if the moving party can show that it is entitled to judgment as a matter of law and there are no disputes of material fact. *Id.* There is a genuine issue of material fact if reasonable minds could differ on a fact that controls the outcome of the litigation. *Id.* The nonmoving party can avoid summary judgment if it " 'set[s] forth specific facts which sufficiently rebut the moving party's contentions and disclose the existence of a genuine issue as to a material fact.' " *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008) (alteration in original) (quoting *Meyer v. Univ. of Wash.*, 105 Wn.2d 847, 852, 719 P.2d 98 (1986)).

DISCUSSION

I. DISPUTE OF MATERIAL FACTS

Seasoft asserts in passing that summary judgment was improper because there were still questions of material fact. But Seasoft fails to identify any material facts that it believes were in dispute.

To the extent that Seasoft is arguing that Justinen's declaration created a dispute of material fact, we are unpersuaded. In the declaration, Justinen disputed Ecology's version regarding the severity and the number of Seasoft's violations. However, under RCW 34.05.586, "a respondent may not assert as a defense in a proceeding for civil enforcement any fact or issue that the respondent had an opportunity to assert before the agency or a reviewing court and did not," unless an exception under the statute applies. Seasoft had the opportunity to assert these alleged facts earlier and did not, and Seasoft does not assert that one of the statutory exceptions applies.

Furthermore, this is an enforcement proceeding not a determination of liability or a fact finding proceeding, so the time for Seasoft to challenge the severity and number of violations has passed. Therefore, even though Seasoft disputes the extent of its violations, these facts were not material in an enforcement proceeding. Accordingly, Seasoft fails to establish a disputed issue of material fact.

## II. EIGHTH AMENDMENT

Seasoft also claims that summary judgment was improper because the $197,000 penalty violates the Eighth Amendment.

We decline to consider Seasoft's Eighth Amendment challenge because Seasoft failed to raise this argument in an earlier proceeding, and is thus barred by statute from bringing this argument in an enforcement proceeding. Furthermore, even if we were to consider Seasoft's Eighth Amendment challenge, it fails to explain how Ecology's penalty violated the Eighth Amendment.[3]

---

[3] Article I, section 14 of the Washington Constitution also prohibits excessive fines. However, Seasoft did not provide any argument in its opening brief regarding this provision. Therefore, we do not consider whether Ecology's penalty violated the Washington Constitution. RAP 10.3(a)(6); *Billings v. Town of Steilacoom*, 2 Wn. App. 2d 1, 33, 408 P.3d 1123 (2017).

A. LEGAL PRINCIPLES

The Eighth Amendment to the United States Constitution prohibits "excessive fines." Two overarching principles courts consider when analyzing Eighth Amendment challenges are whether the "judgments about the appropriate punishment for an offense belong in the first instance to the legislature" and whether "any judicial determination regarding the gravity of a particular criminal offense will be inherently imprecise." *United States v. Bajakajian*, 524 U.S. 321, 336, 118 S. Ct. 2028, 141 L. Ed. 2d 314 (1998). "To show appropriate respect to both principles, the [Supreme] Court held that a fine is excessive 'if it is grossly disproportional to the gravity of a defendant's offense.' " *State v. Grocery Mfrs. Ass'n*, 198 Wn.2d 888, 899, 502 P.3d 806 (2022) (quoting *Bajakajian*, 524 U.S. at 334).

We consider the *Bajakajian* factors to determine if a fine is grossly disproportional: " '(1) the nature and extent of the crime, (2) whether the violation was related to other illegal activities, (3) the other penalties that may be imposed for the violation, and (4) the extent of the harm caused.' " *Id.* (internal quotation marks omitted) (quoting *State v. Grocery Mfrs. Ass'n*, 195 Wn.2d 442, 476, 461 P.3d 334 (2020)). The appellant's ability to pay the fine is also considered. *Id.* We review de novo whether a fine is grossly disproportional. *Id.*

B. ANALYSIS

*1. Eighth Amendment not Timely Raised*

The time for Seasoft to raise an Eighth Amendment challenge has passed. As we note above, under RCW 34.05.586, "a respondent may not assert as a defense in a proceeding for civil enforcement any fact or issue that the respondent had an opportunity to assert before the agency or a reviewing court and did not." Seasoft had an opportunity to appeal this penalty to the Board,

and then to the superior court. But Seasoft failed to utilize the established procedure to challenge the penalty. Because there is no record of Seasoft making this argument prior to the enforcement proceeding, Seasoft cannot raise it for the first time in an enforcement proceeding.[4]

*2. Insufficient Briefing*

Even if we were to consider Seasoft's Eighth Amendment challenge, Seasoft fails to show the penalty violated the Eighth Amendment. Seasoft provides extensive briefing on how the Eighth Amendment applies to the states, but fails to provide any analysis on how the Eighth Amendment was violated in this case. Seasoft also acknowledges Washington has adopted the *Bajakajian* factors, but provides no discussion on the factors or how the factors demonstrate that the penalty in this case violated the Eighth Amendment.

Based on Seasoft's recitation of the facts, Seasoft perhaps contends that the $197,000 penalty violates the Eighth Amendment because it is a larger penalty than has been imposed *in other cases*. But our supreme court has already noted that "*Bajakajian*'s test analyzes whether the penalty is grossly disproportional to the defendant's bad *conduct*. It does not analyze whether the penalty is disproportional to the one imposed in other . . . cases." *Grocery Mfrs. Ass'n*, 198 Wn.2d at 906.[5]

---

[4] Ecology also argues that the doctrine of exhaustion of administrative remedies prohibits Seasoft's constitutional argument. Because we hold that Seasoft's argument is not timely under RCW 34.05.586, we decline to consider this argument.

[5] We also note that under the *Bajakajian* factors, if the fine is within the range prescribed by the legislature, there is a strong presumption that the fine is constitutional. *City of Seattle v. Long*, 198 Wn.2d 136, 175, 493 P.3d 94 (2021). As Ecology notes, RCW 70A.300.090, which deals with hazardous waste management, provides for a penalty of up to $10,000 for each distinct violation per day. Here, there were 29 distinct violations; therefore, the $197,000 penalty fell well within the range prescribed by the legislature.

Seasoft fails to show that Ecology's penalty violates the Eighth Amendment.[6]

CONCLUSION

Seasoft fails to show any remaining questions of material fact, and, therefore, summary judgment in favor of Ecology was properly granted. Further, RCW 34.05.586 prevents Seasoft from raising its Eighth Amendment claim for the first time in this civil enforcement proceeding. Finally, even if Seasoft's Eighth Amendment argument were not untimely, Seasoft fails to explain how the penalty violates the Eighth Amendment.

Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, A.C.J.

We concur:

WORSWICK, J.

MAXA, J.

---

[6] Seasoft also references substantive due process in its brief. In addition to the nature of this claim being unclear, Seasoft failed to raise a substantive due process argument in an earlier proceeding, or even below to the trial court. RCW 34.05.586; RAP 2.5. Accordingly, we decline to consider it.